1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

          Plaintiff,

     v.

ROGER HOEN, et al.,

          Defendants, and

WASHINGTON BEER AND WINE
WHOLESALERS ASSOCIATION,

          Intervenor-Defendant

No. C04-360P

ORDER ON PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY
JUDGMENT ON SECOND CLAIM
AND RELATED PORTION OF THIRD
CLAIM

       This matter comes before the Court on Plaintiff Costco Wholesale Corporation's motion for
partial summary judgment on its second claim and the related portion of its third claim.  (Dkt. No. 69).
Defendants and the Intervenor-Defendant have filed a joint brief in opposition to Plaintiff's motion.
Having heard oral argument on this motion and having reviewed the papers and pleadings submitted
by the parties, as well as an amicus brief filed by the Washington Wine Institute, the Court hereby
ORDERS as follows:

       (1)     Plaintiff's motion for summary judgment is GRANTED in part.  The Court finds that

                Washington statutes that permit in-state beer and wine producers to distribute their

                products directly to retailers, while withholding such privileges from out-of-state beer

ORDER - 1

1    and wine producers, discriminate against out-of-state producers in violation of the

2    Commerce Clause of the United States Constitution.

3    (2)    The Court DENIES Plaintiff's request that the Court remedy the unconstitutionality of

4    Washington's policies by extending the self-distribution privilege currently granted to

5    in-state wineries and breweries to out-of-state wineries and breweries.  The remedy

6    proposed by Plaintiff would be more disruptive to Washington's existing statutory

7    scheme than withdrawing the self-distribution privilege from in-state wineries and

8    breweries.

9    (3)    The Court STAYS the entry of judgment on these claims until April 14, 2006.  Under

10    the circumstances of this case, such a stay of judgment is warranted to provide a

11    sufficient period of time for the Washington State Legislature to determine whether to

12    extend the self-distribution privilege to out-of-state beer and wine producers, rather

13    than withdrawing the privilege from in-state entities.

14                                              **Background**

15    Plaintiff Costco Wholesale Corporation ("Costco") is challenging a number of Washington

16    state laws and regulations governing the sale and distribution of beer and wine.  Defendants are

17    members of the state Liquor Control Board (LCB).  In addition, the Washington Beer and Wine

18    Wholesalers Association (WBWWA) has been granted leave to appear as an Intervenor-Defendant.[1]

19    Costco raises both antitrust and constitutional claims in this litigation.  This motion solely concerns

20    Costco's constitutional claims.

21    Like many states, Washington has established a "three-tier" system to regulate the sale and

22    distribution of alcoholic beverages.  The "three tiers" refer to: (1) the producer; (2) the distributor or

23    wholesaler; and (3) the retailer.  For the most part, state law prohibits wine and beer producers from

24    _____

25    [1] For ease of reference, the Court will refer to the Defendants and the Intervenor-Defendant
collectively as "Defendants."

ORDER - 2

1    selling their products directly to retailers.  Instead, the products generally must pass through a separate

2    distributor or wholesaler before reaching the retailer.

3           RCW 66.24.170 and 66.24.240 create an exception to this rule for wineries and breweries that

4    manufacture products in Washington state.  The two statutes concern the licensing of "domestic"

5    wineries and breweries.[2]  RCW 66.24.170(3) provides that "[a]ny domestic winery licensed under this

6    section may also act as a distributor and/or retailer of wine of its own production."  Similarly, RCW

7    66.24.240(2) provides that "[a]ny domestic brewery, except for a brand owner of malt beverages

8    under RCW 66.04.010(5), licensed under this section may also act as a distributor and/or retailer for

9    beer of its own production."  Both statutes provide that a domestic winery or brewery operating as a

10   distributor and/or retailer "shall comply with the applicable laws and rules relating to distributors

11   and/or retailers."  RCW 66.24.170(3) and 66.24.240(2).

12          In effect, these statutes allow domestic wineries and breweries to "self-distribute" their

13   products directly to retailers.  By contrast, out-of-state beer and wine producers must sell their

14   products to a distributor, who in turn sells the products to retailers. See, e.g., RCW 66.28.070(1).

15          In the second claim set forth in its complaint, Costco challenges the constitutionality of RCW

16   66.24.170 and 66.24.240 as follows:

17          RCW 66.24.170 and 66.24.240 permit only Washington-based wineries and brewers to
            distribute directly to retailers.  These statutes unlawfully discriminate against out-of-state
18          wineries and brewers and against those seeking to deal with such businesses in violation of the
            Commerce Clause.
19
20   Complaint ¶ 21.  In its third claim, Costco alleges that it has been deprived of its constitutional rights

     in violation of 42 U.S.C. § 1983.  Id. ¶ 23.

21

22

23   _____

24          [2]  A "domestic winery" is defined as "a place where wines are manufactured or produced
     within the state of Washington," while a domestic brewery is defined as "a place where beer and malt
25   liquor are manufactured or produced by a brewer within the state."  RCW 66.04.010(11)-(12).

ORDER - 3

1          **Analysis**

2    1.      _Granholm v. Heald_

3          Costco's motion for summary judgment relies significantly on the Supreme Court's recent

4    decision in Granholm v. Heald, 125 S. Ct. 1885 (2005).  In Granholm, the Court considered the

5    constitutionality of laws in Michigan and New York that allowed in-state wineries to ship their

6    products directly to consumers, while prohibiting (or sharply restricting) the ability of out-of-state

7    wineries to do so.  The Court found that such laws discriminated against interstate commerce in

8    violation of the Commerce Clause of the Constitution, Art. I, § 8, cl. 3.

9          The Granholm Court began its analysis by noting that "in all but the narrowest circumstances,

10   state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-

11   state economic interests that benefits the former and burdens the latter.'"  Id. at 1895 (internal citation

12   omitted).  The Court further noted that "[s]tate laws that discriminate against interstate commerce face

13   'a virtually _per se_ rule of invalidity.'"  Id. at 1897 (internal citation omitted).

14         Michigan and New York attempted to justify their discrimination against out-of-state wineries

15   by invoking § 2 of the Twenty-first Amendment, which provides the states with broad authority to

16   regulate alcohol.  The Court rejected the states' argument, finding that "state laws that violate other

17   provisions of the Constitution are not saved by the Twenty-first Amendment" and that "state

18   regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause."  Id. at

19   1903-04.  After analyzing Supreme Court precedent before and after prohibition, the Court held that

20   state policies regulating the distribution of alcohol "are protected under the Twenty-first Amendment

21   when they treat liquor produced out of state the same as its domestic equivalent."  Id.  at 1905.

22         Although the Michigan and New York policies discriminated against out-of-state wineries, the

23   Court noted that the policies could be upheld if they advanced "a legitimate local purpose that cannot

24   be adequately served by reasonable nondiscriminatory alternatives."  Id. (internal citation omitted).

25   The states offered two primary rationales: keeping alcohol out of the hands of minors and facilitating

ORDER - 4

tax collection.  The Court rejected both arguments, finding that these purposes could be achieved

through other nondiscriminatory alternatives.  The Court held that the states must demonstrate that

discrimination is "demonstrably justified" and that state regulations that discriminate against interstate

commerce will be upheld "only after finding, based on concrete record evidence, that a State's

nondiscriminatory alternatives will prove unworkable."  Id. at 1907 (internal citations and quotations

omitted).

The Court concluded its holding as follows:

> States have broad power to regulate liquor under § 2 of the Twenty-first Amendment.  This
> power, however, does not allow States to ban, or severely limit, the direct shipment of out-of-
> state wine while simultaneously authorizing direct shipment by in-state producers.  If a State
> chooses to allow direct shipment of wine, it must do so on evenhanded terms.  Without
> demonstrating the need for discrimination, New York and Michigan have enacted regulations
> that disadvantage out-of-state wine producers.  Under our Commerce Clause jurisprudence,
> these regulations cannot stand.

Id. at 1907.

2.      Applicability of Granholm to Plaintiff's Claims

Costco argues that Granholm is directly applicable to this case and requires a finding that

Washington's policies are unconstitutional.  Although the WBWWA had argued earlier in this

litigation that the issues presented in Granholm were "in principle the same" as the issues in this case,

Defendants now attempt to distinguish Granholm.

a.      Ability of States to Grant Distributor Privileges Only to In-State Producers

Defendants argue that the challenged statutes merely allow in-state wineries and breweries to

serve as distributors for their own products.  They suggest that this practice is constitutionally

permissible, arguing that "Washington treats all beer and wine sold to retailers the same, wherever it is

produced: retailers can only buy from entities licensed as distributors by the State."  (Opp. Brief at 3).

Defendants' argument is not persuasive.  Like the Michigan policy at issue in Granholm, the

"discriminatory character" of the Washington system is "obvious."  Granholm, 125 S. Ct. at 1896.

Domestic beer and wine producers are allowed to distribute their products directly to retailers, while

1  out-of-state producers may not.  This privilege provides clear advantages to in-state wineries and

2  breweries that out-of-state producers do not enjoy.  The Washington Wine Institute has submitted

3  declarations from Washington winery owners who indicate that the cost of selling their products

4  through wholesalers is quite high and cuts sharply into their profitability.  Several winery owners also

5  note that it can be very difficult to find a distributor willing to take their products, particularly in cases

6  involving small wineries.  Similar issues were noted by the Court in Granholm.  See id. (noting that

7  Michigan law requiring out-of-state wines to pass through an in-state wholesaler increases costs of

8  out-of-state wines and that the inability to secure a wholesaler for small shipments can effectively bar

9  small wineries from the Michigan market).

10        As Costco notes, Washington's policies create a situation where "only in-state wineries can

11  avoid the bottleneck of obtaining a distributor."  Costco also asserts that "only in-state wineries do not

12  have to impose two tiers' worth of minimum mark-ups (producer and distributor)."  (Reply Brief at 3).

13  Costco is referring to Washington laws that require two levels of "minimum mark-ups" when beer and

14  wine is sold in the state.  First, when a producer sells beer or wine to a wholesaler, the products must

15  be sold for at least 10 percent more than the cost of production.  RCW 66.28.180(3)(b).  The second

16  mark-up occurs when a wholesaler sells beer or wine to a retailer; the product must be sold for at least

17  10 percent more than the wholesaler's acquisition cost.  RCW 66.28.180(2)(d).

18        On the record before the Court, it is readily apparent that Washington law discriminates

19  against out-of-state beer and wine producers and prevents them from competing on equal terms with

20  in-state producers.  Washington law subjects out-of-state wineries and breweries, but not in-state

21  producers, to the added costs and burdens of selling their products through a separate wholesaler

22  under the three-tier system.  Under Granholm, such discrimination against out-of-state producers is

23  not consistent with the Commerce Clause.

24

25

b.      Applicability of _Granholm_ to Direct Shipments to Retailers, Rather than to Consumers

The _Granholm_ Court struck down state laws that prohibited out-of-state producers from selling their products directly to consumers.  Seizing on this distinction, Defendants argue that _Granholm_ is limited to cases involving direct sales from producers to consumers, rather than cases involving direct sales from producers to retailers.  Defendants suggest that "it is clear that the _Granholm_ majority believes there is a constitutionally significant difference between sales of alcoholic beverages to individuals for personal use and sales of such products to retailers for resale."  (Opp. Brief at 7).

Costco argues that nothing in _Granholm_'s holding or language suggests that prohibiting only out-of-state producers from selling directly to retailers is any less constitutionally offensive than prohibiting them from selling directly to consumers.  The Court agrees.  The central question in both _Granholm_ and in this case is whether a state can discriminate against out-of-state producers.  Allowing in-state producers to sell beer and wine directly to retailers, while withholding that privilege from out-of-state producers, presents the same type of discrimination against interstate commerce that the Court in _Granholm_ held to be unconstitutional.  _Granholm_ does not suggest that it may be constitutionally permissible for states to discriminate against out-of-state producers in sales to retailers, but not in sales to consumers.

3.     Legitimate Local Purposes for Discrimination Against Interstate Commerce

Defendants argue that even if RCW 66.24.170 and 66.24.240 discriminate against interstate commerce, the statutes are nonetheless valid because they advance legitimate local purposes that cannot be adequately served by any reasonable nondiscriminatory alternatives.  If the State can make such a showing, the statutes may be upheld despite their discrimination against interstate commerce.  See _Granholm_, 125 S. Ct. at 1905.  However, the _Granholm_ Court made it clear that a state seeking to justify discrimination against interstate commerce faces a considerable burden.  The Court noted:

1

> Our Commerce Clause cases demand more than mere speculation to support discrimination against out-of-state goods. The "burden is on the State to show that 'the *discrimination* is demonstrably justified.'" The Court has upheld state regulations that discriminate against interstate commerce only after finding, based on concrete record evidence, that a State's nondiscriminatory alternatives will prove unworkable.

2

3

4    Granholm, 125 S. Ct. at 1907 (internal citations omitted) (emphasis in original).

5          Here, Defendants offer two local purposes for denying out-of-state producers the right to sell

6    their products directly to retailers: (1) ensuring the orderly distribution of beer and wine; and (2)

7    facilitating tax collection.

8          a.    Orderly Distribution

9          Defendants argue that the state would not be able to assert sufficient control over the

10   distribution of beer and wine if out-of-state retailers were permitted to sell directly to retailers.

11   Defendants note that Washington has multiple laws governing the sale and distribution of beer and

12   wine. They argue that the State needs to conduct audits and annual inspections of distributors in order

13   to ensure compliance with these laws and that they do not have the resources to perform audits or

14   inspections for all out-of-state beer and wine producers who may seek to sell products directly to

15   retailers. They suggest that if out-of-state producers are allowed to sell directly to retailers, the State

16   will "lose all practical ability to control the distribution of alcohol." (Opp. Brief at 12).

17         Defendants' arguments are based on a declaration from Lorraine Lee, the Liquor Control

18   Board's director of licensing and regulation. Ms. Lee asserts that the State "could not properly

19   enforce its mandated responsibilities in enforcing the statutes and regulations by having to inspect out-

20   of-state suppliers acting in the capacity as a distributor." (Lee Decl., ¶ 4). She also states that there

21   "are not enough liquor enforcement officers to inspect the numerous suppliers outside the State of

22   Washington." Id.

23         In response, Costco notes that similar arguments were raised in Granholm. See Granholm, 125

24   S. Ct. at 1907 (noting that "Michigan and New York offer a handful of other rationales, such as

25

facilitating orderly market conditions, protecting public health and safety, and ensuring regulatory

accountability.")   The <u>Granholm</u> Court rejected those arguments, holding:

> These objectives can . . . be achieved through the alternative of an evenhanded licensing
> requirement.  Finally, it should be noted that improvements in technology have eased the
> burden of monitoring out-of-state wineries.  Background checks can be done electronically.
> Financial records and sales data can be mailed, faxed, or submitted via e-mail.

<u>Id.</u>

Costco also argues that the Defendants have not indicated what purposes are accomplished by

annual inspections of distributors, nor has the State provided any evidence regarding the potential cost

of auditing out-of-state producers acting as distributors.  In addition, Costco notes that Defendants

have not established that the state is financially unable to hire more enforcement agents or that the cost

of doing so could not be defrayed through licensing fees.  Costco also suggests that  physical visits to

distributors could be done cooperatively by other state liquor control boards.

The Court finds that Defendants have not produced sufficient evidence to create a genuine

issue of material fact on whether discrimination against out-of-state producers is demonstrably

justified to ensure orderly distribution of beer and wine.  Defendants' arguments are largely

speculative and conclusory.  Much like in <u>Granholm</u>, Defendants provide "little concrete evidence for

the sweeping assertion that they cannot police direct shipments by out-of-state" producers.  <u>Granholm</u>,

125 S. Ct. at 1907.  The state must provide "more than mere speculation to support discrimination

against out-of-state goods." <u>Id.</u>   Under these standards, Defendants have not made a sufficient

showing to avoid summary judgment.

      b.    <u>Tax Collection</u>

Defendants also argue that distributor privileges must be restricted to in-state entities in order

to facilitate tax collection.  In Washington, the "liter tax" on beer and wine is paid and collected at the

distributor level, rather than at the retailer level.  Defendants argue that the State "is better able to

1  enforce the collection of such taxes than would be the case if the tax-collecting entity was out-of-

2  state."  (Opp. Brief at 12).

3         Costco responds by noting that similar arguments were raised in <u>Granholm</u>.  Like Defendants,

4  New York state argued that tax collection was a legitimate local purpose for prohibiting out-of-state

5  wineries from shipping directly to consumers.  The Court rejected this argument, finding that "New

6  York could protect itself against lost tax revenue by requiring a permit as a condition of direct

7  shipping" and that "[l]icensees could be required to submit regular sales reports and to remit taxes."

8  <u>Granholm</u>, 125 S. Ct. at 1906.  Costco argues that there is no reason why Washington could not do

9  the same, noting that the state already requires out-of-state producers to obtain "certificates of

10  approval" in order to sell their products to Washington wholesalers.

11         Costco also notes that until relatively recently the state relied on retailers, rather than

12  wholesalers, to collect the liter tax on beer and wine.  Costco states that this duty was shifted to

13  wholesalers in 1973 for wine and in 2000 for beer.  Costco argues that the state offers no reason why

14  the liter tax could not again be collected at the retailer level, rather than at the distributor level.

15         The Court finds that Defendants have not presented evidence that is sufficient to create a

16  genuine issue of material fact on whether discrimination against out-of-state beer and wine producers

17  is demonstrably justified to facilitate tax collection.  As before, Defendants' arguments are speculative

18  and conclusory at best.

19         c.    <u>Other Non-Discriminatory Alternative</u>

20         Finally, it should be noted that Washington has at least one non-discriminatory alternative to

21  the current regulatory scheme that would address Defendants' professed concerns about ensuring

22  orderly distribution of beer and wine and facilitating tax collection: The state could revoke the self-

23  distribution privileges granted to in-state beer and wine producers.  As the Fourth Circuit noted in a

24  recent case where a 1981 North Carolina law allowed in-state wineries, but not out-of-state wineries,

25  to sell their products directly to consumers:

ORDER - 10

> At least one reasonable nondiscriminatory alternative is available to North Carolina and it would require North Carolina simply to return to the pre-1981 structure and require in-state wines to pass through the same three-tiered scheme that all other wines must pass through.

Beskind v. Easley, 325 F.3d 506, 515 (4th Cir. 2003).  Similarly, Washington state could avoid discrimination against out-of-state producers by requiring both in-state and out-of-state producers to sell their products through the same three-tiered structure.

4.      Remedy

The constitutional infirmities of Washington's system may be remedied by two different approaches: (1) allowing out-of-state producers of beer and wine to distribute directly to retailers; or (2) prohibiting in-state producers of beer and wine from distributing directly to retailers.  Costco and the Washington Wine Institute support the first alternative, while the LCB defendants and the Washington Beer and Wine Wholesalers Association argue for the second option.  The Wine Institute also suggests that the Court should stay enforcement of any order on this matter until the State Legislature has had sufficient time to revise the challenged statutes.

Both sides cite Heckler v. Matthews, 465 U.S. 728 (1984), to support their positions.  In Heckler, the Court stated that when a district court is faced with a "constitutionally underinclusive" statute, it has "two remedial alternatives: [it] may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion."  Id. at 738 (internal citations and quotations omitted).  In a footnote, the Court elaborated on this point:

> Although the choice between "extension" and "nullification" is within the "constitutional competence of a federal district court," and ordinarily "extension, rather than nullification, is the proper course," the court should not, of course, "use its remedial powers to circumvent the intent of the legislature," and should therefore "measure the intensity of commitment to the residual policy and consider the degree of potential disruption of the statutory scheme that would occur by extension as opposed to abrogation."

Id. at 739 n.5 (internal citations omitted).

ORDER - 11

1        Costco points to language from <u>Heckler</u> stating that "extension, rather than nullification" is

2   ordinarily the proper way to remedy an underinclusive statute.  Costco also notes that since <u>Granholm</u>,

3   several district courts have held that state laws allowing only in-state wine producers to sell directly to

4   consumers should be remedied by extending the direct shipment privilege to out-of-state producers.

5        Defendants argue that Washington has a long history of enforcing a three-tier system and that

6   the remedy proposed by Costco "would require the court to invade the province of the state legislature

7   and amend a number of provisions regarding the three-tier system."  Defendants note that the

8   Washington Legislature has adopted severability clauses for the state's beer and wine distribution

9   laws, which generally provide that if any provisions of the statutes are held invalid, the remainder of

10  the statutes should not be affected.  RCW 66.98.080, 090.  Defendants also point to <u>Beskind v.</u>

11  <u>Easley</u>, 325 F.3d 506 (4th Cir. 2003), a case involving a North Carolina law that allowed in-state wine

12  producers to sell directly to consumers, while requiring out-of-state producers to sell through

13  wholesalers.  The <u>Beskind</u> court remedied the unconstitutionality of the statute by striking down the

14  preference for in-state wineries.  In explaining its reasoning, the court noted:

15          [W]e can accept a presumption that North Carolina would want to uphold and preserve all of
            its [Alcoholic Beverage Control] laws against constitutional challenges.  Accordingly, when
16          presented with the need to strike down one or more of those laws as unconstitutional, we can
            assume that North Carolina would wish us to take the course that least destroys the regulatory
17          scheme that it has put into place pursuant to its powers under the Twenty-first Amendment.
            And as a matter of comity and harmony, we are duly bound to give effect to such a policy,
18          disturbing only as much of the State regulatory scheme as is necessary to enforce the U.S.
            Constitution.  When applying this "minimum-damage" approach, we have little difficulty in
19          concluding that it causes less disruption to North Carolina's . . . laws to strike the single
            provision – added in 1981 and creating the local preference – as unconstitutional and thereby
20          leave in place the three-tiered regulatory scheme that North Carolina has employed since 1937
            and has given every indication that it wants to continue to employ.

21  <u>Id.</u> at 519.

22       In this case, the remedy proposed by Defendants would appear to create the "minimum

23  damage" to the existing statutory and regulatory scheme in Washington.  Defendants remedy would

24  require portions of only two statutory provisions (RCW 66.24.170(3) and RCW 66.24.240(2)) to be

25

ORDER - 12

1    invalidated.  By contrast, a proposed order submitted by Costco would require six statutory provisions

2    to be amended in order to extend the self-distribution privilege to out-of-state producers.  (RCW

3    66.12.030(2), 66.28.070(1), 66.24.170(3), 66.24.206; 66.24.240(2), and 66.24.270).  Defendant's

4    proposed remedy would remove a limited exception to Washington's long-standing three-tier system,

5    while Plaintiff's proposed remedy would significantly expand this exception.  Extending the self-

6    distribution privilege to out-of-state producers would also require more significant changes in the

7    State's licensing, enforcement, and tax collection efforts for beer and wine than withdrawing the

8    privilege from in-state producers.

9          Therefore, the more appropriate remedy from a judicial perspective would be to withdraw the

10   self-distribution from in-state producers, rather than extending the privilege to out-of-state producers.

11   It should be emphasized that the Court is not empowered to decide which alternative represents better

12   public policy.  Although the Court recognizes that withdrawing the self-distribution privilege would

13   impose financial hardships on Washington wineries, this remedy would appear to be more consistent

14   with the intent of the Washington Legislature because it would impose less significant changes on the

15   existing statutory and regulatory structure for beer and wine in the state.

16         The Washington Wine Institute argues that the Court should "stay the enforcement of its order

17   for a period sufficient to permit the Washington legislature to act on the matter."  (Dkt. No. 109 at 2).

18   The Court agrees.  The constitutional defects in the current Washington system present a policy choice

19   between two alternatives, a decision that is within the discretion of the State Legislature.  Regardless

20   of the remedy chosen by the Court, the State Legislature could simply choose to adopt the other

21   remedy during the upcoming legislative session, which starts in early January 2006.  Therefore, the

22   Court will stay the entry of judgment on this claim until April 14, 2006 to provide the Washington

23   State Legislature with a sufficient period of time to act on this matter.  See, e.g., Population Servs.

24   Int'l v. Wilson, 398 F. Supp. 321, 340-41 (S.D.N.Y. 1975) (staying enforcement of injunction for a

25   period of time to permit state legislature the opportunity to amend unconstitutional statutes).

ORDER - 13

1

**Conclusion**

2      In light of the Supreme Court's decision in <u>Granholm</u>, Washington may not permit in-state

3   beer and wine producers to distribute their products directly to retailers while withholding that

4   privilege from out-of-state producers.  Without demonstrating the need for such discrimination,

5   Washington's system prevents out-of-state beer and wine producers from competing on equal terms

6   with in-state producers.  Under the Commerce Clause of the United States Constitution, Washington's

7   policies cannot stand.  Therefore, the Court GRANTS in part Costco's motion for summary judgment

8   on its second claim and the related portion of its third claim.

9      The Court DENIES Costco's request to remedy the unconstitutionality of Washington's

10   system by extending the self-distribution privilege to out-of-state producers.  This remedy would be

11   more disruptive to the existing statutory and regulatory scheme than withdrawing the self-distribution

12   privilege from in-state producers.  The Court recognizes, however, that the Washington State

13   Legislature ultimately has the authority to decide whether to correct the constitutional infirmities of

14   the Washington system by either extending the self-distribution privilege to out-of-state producers or

15   withdrawing the privilege from in-state producers.  Because the State Legislature will be convening in

16   early January 2006, the Court will stay the entry of judgment on these claims until April 14, 2006 in

17   order to provide the State Legislature with sufficient time to act on this matter.

18      The clerk is directed to provide copies of this order to all counsel of record.

19      Dated: December 21, 2005

20

21                              s/Marsha J. Pechman
                              Marsha J. Pechman
22                              United States District Judge

23

24

25

ORDER - 14