UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

Plaintiff,

v.

ROGER HOEN, et al.,

Defendants, and

WASHINGTON BEER AND WINE WHOLESALERS ASSOCIATION,

Intervenor-Defendant

No. C04-360P

ORDER ON SUMMARY JUDGMENT MOTIONS RE: ANTITRUST CLAIMS

Three motions for summary judgment on Plaintiff Costco Wholesale Corporation's antitrust claims are before the Court:

(1) Costco's motion for summary judgment on its first claim and the related portion of its third claim. (Dkt. No. 70).

(2) Defendants' motion for partial summary judgment on Plaintiff's first claim. (Dkt. No. 68).

(3) The Washington Beer and Wine Wholesalers Association's (WBWWA) motion for partial summary judgment. (Dkt. No. 67).

Having reviewed the papers and pleadings submitted by the parties and having heard oral argument on the pending motions, the Court hereby ORDERS as follows:

ORDER - 1

(1) Costco's motion for summary judgment is DENIED. There are disputed issues of material fact on whether the challenged restraints may be preserved under the Twenty-first Amendment.

. (2) Defendants' motion for summary judgment is DENIED. Defendants have not demonstrated that this matter should be dismissed on antitrust immunity grounds.

(3) The WBWWA's motion for summary judgment is DENIED. The WBWWA has not demonstrated that the challenged restraints are permissible under the Sherman Act.

(4) The Court requests supplemental briefing from the parties on whether the "central warehousing" ban and the prohibition on retailer-to-retailer sales are irreconcilably in conflict with the Sherman Act. Each party should submit a single brief limited to ten pages that addresses both issues (i.e., separate briefs on each issue should not be filed). Supplemental briefs shall be filed by 5:00 p.m. on <u>January 10, 2006</u>. No responses to another party's supplemental brief shall be filed unless directed by the Court.

**Background**

Costco is challenging various Washington laws and regulations governing the sale and distribution of beer and wine. Costco raises both antitrust and constitutional claims. The motions addressed in this order are directed at Costco's antitrust claims. Costco argues that the challenged statutes and regulations are anti-competitive and benefit wholesalers at the expense of retailers and consumers.

Defendants are members of the Washington State Liquor Control Board (LCB). The Washington Beer and Wine Wholesalers Association (WBWWA) has been granted leave to appear in this action as an Intervenor-Defendant.

Costco's antitrust claims are directed at Washington state statutes and regulations that:

ORDER - 2

1  (1) Prohibit volume discounts on the sale of beer and wine (RCW 66.28.180(2)(d) & 3(b); WAC 314-12-140(3)).[1]

(2) Require distributors to sell beer and wine at a uniform price to all retailers, which may be referred to as the "uniform pricing" requirement. (WAC 314-20-100(2), (4) & (5); WAC 314-24-190(2), (4) & (5)).

(3) Prohibit retailers from buying beer and wine on credit (WAC 314-13-015; RCW 66.28.010; WAC 314-20-090; WAC 314-12-140(3)).

(4) Require that beer and wine prices from manufacturers and distributors be posted with the LCB and that no sales be made at other than the posted prices, which may be referred to as the "posting" requirement. (RCW 66.28.180(2)-(3)).

(5) Require beer and wine prices to be posted well in advance of their effective dates and be held for a full month, which may be referred to as the "holding" requirement. (WAC 314-20-100(2); WAC 314-24-190(2)).

(6) Require a 10% minimum mark-up on beer and wine prices from manufacturer to wholesaler and from wholesaler to retailer, which may be referred to as the "minimum mark-up" requirement. (RCW 66.28.180(2)(d) & (3)(b)).

(7) Require distributors to sell at "delivered" pricing even if a retailer pays the freight and picks up the goods from the distributor, which may be referred to as the "delivered pricing" requirement. (RCW 66.28.180(2)(h)(ii)).

(8) Prohibit retailers from selling beer and wine to other licensed retailers. (RCW 66.28.070).[2]

---

[1] In its summary judgment motion, Costco indicates that it is also challenging RCW 66.28.170. (Dkt. No. 70 at 2). However, Costco did not identify that statute in its complaint.

[2] Costco states in its summary judgment motion that it is also challenging WAC 314-13-010. (Dkt. No. 70 at 3). However, this regulation is not listed as a challenged restraint in Costco's complaint.

ORDER - 3

1     (9)     Prohibit a retailer from receiving beer and wine at is own warehouse or from bonded warehouses to transfer to its various licensed locations, which may be referred to as the "central warehousing" ban. (RCW 66.28.180(2)(h)(ii)).[3]

The Court has already addressed some of the issues raised by the instant motions in ruling on a joint motion for judgment on the pleadings by Defendants and the WBWWA. (Dkt. No. 47). In that motion, Defendants and the WBWWA argued that Costco's antitrust claims must be dismissed because the challenged restraints constituted "unilateral" rather than "hybrid" restraints on trade. The Court rejected this argument, finding that "to the degree that the challenged regulatory scheme is a restraint on trade, it is a hybrid restraint, not a unilateral one." Id. at 2.

**Analysis**

Costco argues that the challenged statutes and regulations are pre-empted by the Sherman Act, 15 U.S.C. § 1 et seq. The Sherman Act may preempt a state statute if "the statute on its face irreconcilably conflicts with federal antitrust policy." Rice v. Norman Williams Co., 458 U.S. 654, 659 (1982).

Costco's antitrust claims are analyzed under a framework that consists of four issues. First, the Court considers whether the challenged policies are irreconcilably in conflict with federal antitrust law. Second, the Court considers whether the challenged policies are unilateral or hybrid. Costco bears the burden of proof on these two issues. Third, the Court considers whether the challenged policies are immune from antitrust scrutiny under the state action immunity doctrine. This is an affirmative defense on which Defendants bear the burden of proof. Finally, the Court considers whether the challenged policies may be upheld as a valid exercise of the state's powers under the

---

[3] Costco indicates in its summary judgment motion that it is also challenging RCW 66.24.185(4) and WAC 314-24-220. (Dkt. No. 70 at 3). However, Costco did not identify this statute or regulation in its complaint.

ORDER - 4

Twenty-first Amendment to the United States Constitution, even if the policies are in conflict with the Sherman Act. Defendants also bear the burden of proof for this defense.

Costco's motion for summary judgment addresses all four issues. Defendants' motion for partial summary judgment concerns the issue of antitrust immunity, while the WBWWA's motion addresses the first two issues.

1. <u>Irreconcilable Conflict with Federal Antitrust Law</u>

First, Costco must show that the challenged policies are "irreconcilably in conflict" with federal antitrust law. <u>Rice v. Williams</u>, 458 U.S. 654, 659 (1982). The Court in <u>Rice</u> stated:

> [A] state statute, when considered in the abstract, may be condemned under the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute. Such condemnation will follow under section 1 of the Sherman Act when the conduct contemplated by the statute is in all cases a *per se* violation.

<u>Id.</u> at 661; see also <u>TFWS, Inc. v. Schaefer</u>, 242 F.3d 198, 206-07 (4th Cir. 2001) ("When a state regulatory scheme is challenged for being irreconcilable on its face with § 1 of the Sherman Act, the antitrust violation must be of the per se variety"). The Supreme Court has defined a "per se" violation as follows: "[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for them." <u>Northern Pacific R. Co. v. United States</u>, 356 U.S. 1, 5 (1958).

    a.    <u>Costco's arguments</u>

Costco argues that other courts have held that policies similar or identical to those challenged in this litigation are per se violations of the Sherman Act. In <u>Miller v. Hedlund</u>, 813 F.2d 1344 (9th Cir. 1987), the Ninth Circuit characterized Oregon's posting, holding, and delivered pricing requirements as per se violations. Other courts have held that a ban on volume discounts is a per se violation. See <u>TFWS, Inc. v. Schaefer</u>, 242 F.3d 198, 210 (4th Cir. 2001). The Supreme Court has held that agreements by wholesalers to refuse to sell to retailers on credit is a per se violation.

ORDER - 5

1    Catalano, Inc. v. Target Sales, Inc., 446 U.S. 643, 645-47 (1980).  Other courts have struck down

2    minimum mark-up laws as per se violations.  State of Kansas ex rel. Stephan v. Lamb, 1987 WL

3    12158 (D. Kan. Feb. 26, 1987).  Costco also notes that the LCB itself stipulated in a 1988 federal

4    court ruling that "the 10 percent mandatory minimum markup provision [as it was then imposed at the

5    retail level] constitutes a per se violation of Sherman Act § 1."  (Dkt. No. 74, Ex. 72 ¶ 8).

6         Costco also argues that the uniform pricing requirement is a per se violation of the Sherman

7    Act.  While Costco does not cite case law involving a uniform pricing requirement for alcohol

8    products, Costco notes that courts in other contexts have held that "[a]n agreement to pay or charge

9    rigid, uniform prices would be an illegal agreement under the Sherman Act."  United States v. Socony-

10   Vacuum Oil Co., 310 U.S. 150, 222 (1940); see also Catalano, 446 U.S. at 647-48 (a restraint

11   "pegging, or stabilizing the price . . . is illegal per se") (quoting Socony-Vacuum); FTC v. Cement

12   Inst., 333 U.S. 683, 716 (1948) (pricing system that was "calculated to produce, and has produced,

13   uniform prices" violated the Sherman Act).

14        Costco also contends that Washington's "central warehousing" ban constitutes a per se

15   violation of the Sherman Act.  This policy requires beer and wine to be delivered to a retailer's

16   premises and bars delivery to a retailer's warehouse.  Costco argues that this provision prevents

17   retailers from taking very large deliveries of beer and wine and demanding a lower price for such

18   efficiency.  Although Costco does not point to case law in which similar statutes have been challenged,

19   Costco maintains that the central warehousing ban "is an output restraint and a market allocation of

20   the services of warehousing and delivery," both of which have been recognized as per se violations in

21   other contexts.  See, e.g., United States v. Andreas, 216 F.3d 645, 667 (7th Cir. 2000) ("output

22   restrictions have long been treated as per se violation . . . [They] raise[] prices by reducing supply

23   below demand."); Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 768 (1984) (holding

24   that agreements such as market allocation "are thought so inherently anticompetitive that each is illegal

25   per se without inquiry into the harm it has actually caused").

ORDER - 6

With respect to Washington's prohibition on retailers selling beer and wine to other retailers, Costco offers little argument to support its contention that this policy is a per se violation of the Sherman Act.

### b. The WBWWA's arguments

The WBWWA argues that none of the challenged restraints are preempted by the Sherman Act.[4] In large part, the WBWWA's argument is based on its contention that Costco must show "concerted action" by beer and wine wholesalers in order to prove a Sherman Act violation. However, this argument was rejected by the Ninth Circuit in Miller v. Hedlund, which concerned Oregon laws governing the sale and distribution of alcohol. The Miller court noted:

> The appellees point out . . . that the wholesalers merely act unilaterally in response to the requirements of the regulations and that there is no agreement or concerted activity of any sort among them. They conclude that this absence of any concerted activity precludes the existence of any Sherman Act violation. The appellees' treatment of this difficult issue oversimplifies it. While it is true that there is no agreement or concerted activity among the wholesalers, it can not be ignored that the challenged regulations facilitate the exchange of price information and require adherence to the publicly posted prices. In other words, the state compels activity that would otherwise be a per se violation of the Sherman Act. It is the presence of state compulsion that requires a more refined analysis than the one presented by appellees. Simply ending the analysis because of the lack of concerted activity among the wholesalers fails to take into account the presence and effect of the state's involvement in the matter.

Miller, 813 F.2d at 1349. The Miller court concluded that "a showing of concerted activity among the Oregon wholesalers is not necessary to establish an antitrust violation." Id. at 1350. Although the WBWWA argues that Miller was wrongly decided, this Court is bound by the Ninth Circuit's precedent. Under Miller, the lack of concerted activity among beer and wine wholesalers does not bar Costco's claims.

The WBWWA also points to an earlier order of this Court to argue that Washington's regulatory scheme – in particular, the price "posting" requirements – does not constitute a per se

---

[4] The Liquor Control Board Defendants do not directly address the question of whether the challenged statutes and regulations are per se antitrust violations, but indicate that they support the WBWWA's arguments. (Dkt. No. 68 at 2).

ORDER - 7

1  antitrust violation. In its previous order, the Court found that the Washington regulatory scheme was

2  similar to state regulatory schemes that were overturned by the courts in <u>Miller v. Hedlund</u> and <u>TFWS</u>

3  <u>v. Schaefer</u>. The Court then stated as follows:

> Defendants argue that <u>Miller</u> and <u>TFWS</u> are distinguishable because their holdings were based on the fact that the challenged regulatory scheme made future posted prices public before they become the effective posted prices, and thereby "facilitated" private parties working together to fix prices. According to Defendants, the amended Washington regulatory scheme does not facilitate such conduct, and therefore there is no preemption. . . . <u>Miller</u> stated that the "challenged regulations facilitate the exchange of price information <u>and</u> require adherence to the publicly post prices[,]" which is state compelled activity that would otherwise be a per se violation of the Sherman Act. (emphasis added). The problem was not only that the regulations facilitated the exchange of price information, but also that they required adherence to publicly posted prices. Here, the Washington regulatory scheme explicitly requires adherence to publicly posted prices for 30 days. While the Washington regulatory scheme no longer makes the future posted prices public, it is too early in the case to conclude that the scheme does not somehow otherwise facilitate the exchange of price information.

11 (Dkt. No. 47 at 14). The WBWWA focuses on the last sentence, arguing that because the state no

12 longer makes wholesalers' posted prices publicly available before they become effective – a practice

13 that the parties refer to as an "advance look" – the Washington regulatory scheme does not facilitate

14 the exchange of price information. As such, they argue that the Ninth Circuit's decision in <u>Miller</u> is

15 not applicable here.

16  Costco disputes this assertion, arguing that Washington law continues to facilitate the

17 exchange of price information, even though wholesalers can no longer get an "advance look" at the

18 prices of their competitors. Costco asserts that wholesalers have "special access" to the posted prices,

19 noting that "[o]n their computers (but not on others), they have a 'kiosk' function to give them

20 instantaneous access to competitor's prices." (Dkt. No. 92 at 11). Costco argues that this necessarily

21 facilitates the exchange of price information from the moment each price takes effect.

22  The WBWWA also suggests that the Court must consider each challenged policy individually

23 and sever any provisions that are invalid from the other provisions. However, Costco notes that the

24 Court has previously rejected such arguments in its order on a joint motion for judgment on the

25 pleadings by Defendants and the WBWWA. (Dkt. No. 47 at 13 n.3).

ORDER - 8

c.  Conclusion

For the most part, the Court finds that Costco's arguments are well-supported by closely analogous case law. In particular, Costco provides strong legal authority for its position that Washington's posting, holding, minimum mark-up, delivered pricing, uniform pricing, ban on volume discounts, and ban on credit sales requirements are per se antitrust violations.

As Costco observes, the "posting" requirement makes competitors' prices instantly available to wholesalers as soon as they take effect and facilitates the exchange of price information among wholesalers, even though wholesalers no longer get an "advance look" at the prices of their competitors before they are posted. Moreover, the "posting" requirement is coupled with a "holding" requirement that compels wholesalers to adhere to their posted prices for a calendar month – a clear per se antitrust violation. See, e.g., Miller v. Hedlund, 813 F.2d 1344, 1349 (9th Cir. 1987) ("An agreement to adhere to previously announced prices and terms of sale is unlawful per se under the Sherman Act"); XII Herbert Hovenkamp, Antitrust Law ¶ 2024 (2d ed. 2005) ("Agreements to post *and adhere* are inherently dangerous and should be regarded as illegal per se. . . . Few restraints short of actual price fixing are as anticompetitive as an agreement to require posting and then to prevent 'chiseling' from the posted price") (emphasis in original). Minimum mark-ups have been acknowledged as per se restraints both by the LCB in other litigation and by other courts. Delivered pricing requirements were held to be per se restraints in Miller v. Hedlund, while uniform pricing requirements run afoul of the principles of United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 222 (1940). Bans on volume discounts were deemed per se antitrust violations in TFWS, Inc. v. Schaefer, 242 F.3d 198, 210 (4th Cir. 2001), and bans on credit sales are per se violations under the Supreme Court's decision in Catalano, Inc. v. Target Sales, Inc., 446 U.S. 643 (1980).

Viewed either individually or as an integrated whole, these restraints plainly serve to reduce price competition and to increase the price of beer and wine in Washington – points that Defendants essentially acknowledge. As in TFWS, Inc. v. Schaefer, 242 F.3d 198, 209 (4th Cir. 2001), "[i]f liquor

ORDER - 9

1   wholesalers entered into private agreements to accomplish what is required (and allowed) under the

2   [regulatory] scheme, a per se Sherman Act violation would result." See also Miller, 813 F.2d at 1349

3   ("If the wholesale beer and wine distributors had entered into a private agreement to accomplish what

4   is otherwise required by the Oregon regulations, there is no question that a per se violation of Section

5   1 of the Sherman Act would be found."). The WBWWA's arguments largely boil down to a claim

6   that the challenged restraints are not per se antitrust violations because wholesalers do not engage in

7   concerted activity. However, as discussed above, such an argument was rejected by the Ninth Circuit

8   in Miller v. Hedlund.

9         As a result, the Court finds that Costco has demonstrated that Washington's posting, holding,

10   minimum mark-up, delivered pricing, uniform pricing, ban on volume discounts, and ban on credit sale

11   requirements are irreconcilably in conflict with federal antitrust law.

12         d.    Request for Supplemental Briefing

13         The question of whether the central warehousing ban constitutes a per se antitrust violation

14   presents a more difficult question, given lack of case law in which a similar restraint has been

15   challenged. In addition, Costco has offered little if any argument to support its contention that the ban

16   on beer and wine sales from one retailer to another retailer constitutes a per se antitrust violation,

17   while the WBWWA does not address this issue at all in its summary judgment motion. It is also

18   unclear whether these two policies should be viewed individually or as an integrated part of the other

19   policies challenged by Costco. Therefore, the Court requests supplemental briefing from the parties

20   on whether the "central warehousing" ban and the prohibition on retailer-to-retailer sales are

21   irreconcilably in conflict with the Sherman Act. Each party should submit a single brief limited to ten

22   pages that addresses both issues (i.e., separate briefs on each issue should not be filed). Supplemental

23   briefs shall be filed by 5:00 p.m. on January 10, 2006. No responses to another party's supplemental

24   brief shall be filed unless directed by the Court.

25

ORDER - 10

2. <u>Unilateral or Hybrid Nature of the Challenged Policies</u>

State laws may be condemned under the Sherman Act only if they are "hybrid" restraints, as opposed to "unilateral" restraints. A "unilateral" restraint is one that is unilaterally imposed by the state government to the exclusion of private control. <u>TFWS, Inc. v. Schaefer</u>, 242 F.3d 198, 207-08 (4th Cir. 2001). As the Court previously noted, "[w]here private entities have no control over the pricing because pricing is set by a state governmental body, the state unilaterally restrains the trade." (Dkt. No. 47 at 8). By contrast, a "hybrid" restraint arises where "nonmarket mechanisms merely enforce private marketing decisions." <u>Fisher v. City of Berkeley</u>, 475 U.S. 260, 268 (1986). Where private actors are granted a "degree of private regulatory power" that the state merely enforces, a hybrid restraint arises. (Dkt. No. 47 at 9).

In its previous order on a motion for judgment on the pleadings by Defendants and the WBWWA, the Court held that "to the degree that the challenged regulatory scheme is a restraint on trade, it is a hybrid restraint, not a unilateral one." (Dkt. No. 47 at 2). The Court noted that other courts, including the Ninth Circuit in <u>Miller v. Hedlund</u>, had found that similar regulatory schemes constituted hybrid restraints of trade. The Court further held that it was appropriate to look at Washington's regulatory scheme as a whole to determine whether it amounted to a hybrid restraint on trade. <u>Id.</u> at 13 n.3.

Despite the Court's previous ruling, the parties devote considerable briefing to the question of whether Washington's regulatory scheme is hybrid or unilateral. Much of this briefing concerns an "alternative argument" put forth by Costco. This alternative argument focuses on whether the originator of the challenged restraints is a governmental body furthering a public policy objective, as opposed to private parties seeking to further private ends. Costco examines the legislative and regulatory history behind the challenged policies and argues that the policies were adopted or maintained by the State at the behest of beer and wine wholesalers, rather than to advance public policy objectives. (Dkt. No. 70 at 7-13).

ORDER - 11

1   The Defendants and the WBWWA object strenuously to Costco's arguments, arguing that the
2   legislative or regulatory history behind a state policy is not relevant to determining whether a restraint
3   is hybrid or unilateral. The WBWWA also suggests that no court has struck down a statute under the
4   Sherman Act due to the process by which a challenged restraint was enacted.
5   In light of the earlier ruling, the Court finds that it is not necessary to reach Costco's
6   "alternative argument" regarding the hybrid or unilateral nature of the challenged restraints. The
7   Court reiterates its holding that "to the degree that the challenged regulatory scheme is a restraint on
8   trade, it is a hybrid restraint, not a unilateral one." (Dkt. No. 47 at 2).

10  3.     <u>Antitrust Immunity</u>
11  Defendants argue that Costco's antitrust claims should be dismissed on the grounds of antitrust
12  immunity under <u>Parker v. Brown</u>, 317 U.S. 341 (1943), and <u>California Retail Liquor Dealers Ass'n v.</u>
13  <u>Midcal Aluminum, Inc.</u>, 445 U.S. 97 (1980). To establish antitrust immunity, Defendants must satisfy
14  two elements: (1) the "challenged restraint must be 'one clearly articulated and affirmatively expressed
15  as state policy'"; and (2) "the policy must be 'actively supervised' by the State itself." <u>Midcal</u>, 445
16  U.S. at 105.
17           a.     <u>The "Active Supervision" Requirement</u>
18  The Court first considers the "active supervision" requirement. To support its arguments,
19  Costco points to the <u>Midcal</u> decision, which found no active supervision where a state "simply
20  authorizes price setting and enforces the prices established by private parties." <u>Midcal</u>, 445 U.S. at
21  105. The <u>Midcal</u> Court noted that the state "neither establishes prices nor reviews the reasonableness
22  of the price schedules," nor did the state "monitor market conditions nor engage in any 'pointed
23  reexamination'" of the challenged program. <u>Id.</u> at 105-06. Similarly, the court in <u>Miller v. Hedlund</u>,
24  813 F.2d 1344 (9th Cir. 1987), found that the state of Oregon failed to satisfy the active supervision
25  prong because the state "does not provide for government establishment or review of the prices

ORDER - 12

themselves. . . . Oregon merely authorizes and enforces the disputed pricing practices." <u>Id.</u> at 1351 (internal quotations and citations omitted).

Defendants acknowledge that "Washington does not review the [wholesaler or manufacturer] prices for reasonableness." (Dkt. No. 68 at 15). Costco argues that for this reason alone, Defendants cannot show active supervision of the challenged restraints. However, Defendants maintain that it is not necessary for the state to review prices for reasonableness to satisfy the active supervision prong. They claim that active supervision exists when "state officials *have* and *exercise* power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy." <u>FTC v. Ticor Title Ins. Co.</u>, 504 U.S. 621, 634 (1992) (emphasis in original). In response, Costco notes that "[t]he mere presence of some state involvement or monitoring does not suffice." <u>Patrick v. Burget</u>, 486 U.S. 94, 101 (1988); <u>see also</u> <u>Ticor</u>, 504 U.S. at 638 ("In the absence of active supervision in fact, there can be no-state action immunity.").

Costco also maintains that the State neither monitors market conditions nor engages in any "pointed re-examination" of the restraints, both of which were identified in <u>Midcal</u> as factors to consider in determining antitrust immunity. Defendants do not claim to monitor market conditions. However, Defendants contend the State does engage in "pointed re-examination" of the beer and wine regulatory system, noting that: (1) the Governor convened a committee to evaluate the three-tier system in 1999; and (2) the LCB sought an amendment in 2004 to preclude distributors from viewing each other's posted prices until the prices were effective.

The Court finds Costco's arguments more persuasive. It is undisputed that the State does not review the reasonableness of prices charged by wholesalers. Similar to the situation in <u>Midcal</u>, the State "authorizes price setting and enforces the prices established by private parties." <u>Midcal</u>, 445 U.S. at 105. In addition, Defendants offer no argument that the State monitors market conditions and point to scant evidence that the State engages in "pointed re-examination" of the challenged restraints.

ORDER - 13

1  As a result, the Court finds that Defendants do not satisfy the "active supervision" requirements set

2  forth in <u>Midcal</u> and have not demonstrated that antitrust immunity applies.[5]

3     b.  <u>The "Clearly Articulated" Requirement</u>

4    Because the Court finds that Defendants have not satisfied the "active supervision"

5  requirement, it is not necessary to reach the question of whether the challenged restraints are clearly

6  articulated and affirmatively expressed as state policy. <u>See, e.g.</u>, <u>Miller v. Hedlund</u>, 813 F.3d 1344,

7  1351-52 (9th Cir. 1987) (state's failure to show active supervision defeats antitrust immunity

8  exemption, making it unnecessary to consider "clearly articulated" requirement).

10  4.  <u>Twenty-first Amendment Defense</u>

11    Even if the challenged restraints are irreconcilably in conflict with the Sherman Act, hybrid in

12  nature, and not subject to antitrust immunity, they may nonetheless be shielded by the Twenty-first

13  Amendment to the United States Constitution. "The Twenty-first Amendment grants the States

14  virtually complete control over . . . how to structure the liquor distribution system." <u>Midcal</u>, 445 U.S.

15  at 110. When there is a conflict between the powers granted to the states by the Twenty-first

16  Amendment and the pro-competition federal policies expressed in the Sherman Act, the issue is

17  "whether the interests implicated by a state regulation are so closely related to the powers reserved by

18  the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements

19  directly conflict with express federal policies." <u>Miller</u>, 813 F.2d at 1352 (internal citations omitted).

20  The Supreme Court has identified several "core concerns" of the states under the Twenty-first

---

[5] Defendants also argue that antitrust immunity applies because the challenged restraints are the acts of the "sovereign itself" and that the State is "ipso factor" immune under <u>Parker v. Brown</u>, 317 U.S. 341 (1943). However, the challenged restraints reduce price competition while leaving pricing determinations to private actors, which the state enforces without reviewing the prices for reasonableness. <u>See, e.g.</u>, <u>324 Liquor Corp. v. Duffy</u>, 479 U.S. 335, 345 (1987) (no immunity under <u>Parker</u> where "[t]he State has displaced competition . . . without substituting an adequate system of regulation). As such, the challenged restraints do not solely involve acts of the "sovereign itself."

ORDER - 14

Amendment, including "promoting temperance, ensuring orderly market conditions, and raising revenue." North Dakota v. United States, 495 U.S. 423, 432 (1990).

In TFWS, Inc. v. Schaefer, 242 F.3d 198 (4th Cir. 2001), the court set forth a three-part framework for analyzing a Twenty-first Amendment defense: (1) the court should examine the expressed state interest and the closeness of that interest to those protected by the Twenty-first Amendment; (2) the court should examine whether, and to what extent, the regulatory scheme serves its stated purpose (in other words, "is the scheme effective?"); and (3) the court should balance the state's interest (to the extent that interest is actually further by the regulatory scheme) against the federal interest in promoting competition under the Sherman Act. Id. at 213.

In Miller v. Hedlund, the Ninth Circuit noted:

> In order to resolve [the Twenty-first Amendment] issue, it is necessary to consider and compare the conflicting federal and state interests. As the court said in [Midcal], "there is no bright line between federal and state powers over liquor . . . . The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a 'concrete case.'"

Miller, 813 F.2d at 1352 (internal citations omitted). As this language suggests, a Twenty-first Amendment inquiry may be a fact-intensive exercise. See also TFWS, Inc. v. Schaefer, 242 F.3d 198, 212 (4th Cir. 2001) ("courts do not evaluate the strength of a state's Twenty-first Amendment defense without the benefit of some record"); Miller, 813 F.2d at 1352 (noting that "the Twenty-first Amendment issue may ultimately rest upon findings and conclusions having a large factual component").

Defendants and the WBWWA argue that genuine issues of material fact preclude entry of summary judgment on this issue, arguing among other things that the challenged restraints serve the Twenty-first Amendment interests of promoting temperance and ensuring orderly market conditions. For example, the WBWWA points to the expert report of Dr. Kenneth Casavant, an economist. (Dkt. No. 67-4, Ex. C). In his report, Dr. Casavant examines how Washington's policies serve to achieve Twenty-first Amendment goals. Dr. Casavant opines that "the current system significantly furthers the

ORDER - 15

State's goals of orderly marketing, encouraging temperance, fostering fairness amongst the participants in the marketing system, and generating tax revenue." Id. at 11. Similarly, Defendants point to an expert report by Dr. Frank Chaloupka, who concludes that "[t]he Washington statutes and regulations at issue in this case result in retail prices for beer and wine that are higher than they would be in the absence of these policies" and that "[t]hese higher prices lead to significant reductions in alcohol consumption." (Dkt. 96-3, Ex. 9).

Costco argues that Defendants and the WBWWA have not offered sufficient evidence to preclude summary judgment. Citing the Supreme Court's decision in 324 Liquor Corp. v. Duffy, 479 U.S. 335 (1987), Costco argues that the state must demonstrate that reducing abusive consumption was the "actual purpose" of the challenged restraints. Costco maintains that Defendants bear the burden "to present facts from the regulatory history that show that there were Twenty-first Amendment purposes, rather than post-dispute rationalizations, for these restraints" and argues that Defendants have failed to present such evidence. (Dkt. No. 105 at 11).

However, the Supreme Court's decision in 324 Liquor does not hold that such evidence is required as a matter of law in order to maintain a Twenty-first Amendment defense. Although the Court in 324 Liquor discussed the regulatory history of the restraints at issue in that case, the Court did not state that evidence regarding the regulatory history must be offered in all cases. While such evidence may be relevant in evaluating a Twenty-first Amendment defense, the Court did not hold that it is required as a matter of law.

Therefore, viewing the evidence in the light most favorable to the non-moving party, the Court finds that Defendants and the WBWWA have offered evidence that is sufficient to raise issues of material fact regarding the Twenty-first Amendment defense. As a result, Costco's motion for summary judgment will be denied.

**Conclusion**

Consistent with the discussion above, the Court DENIES the three pending summary judgment motions on Costco's antitrust claims. Costco's motion is denied because disputed issues of material fact exist on whether the challenged restraints may be upheld as a valid exercise of the state's powers under the Twenty-first Amendment. The Liquor Control Board Defendants' motion is denied because they have not demonstrated that this matter should be dismissed on antitrust immunity grounds. The WBWWA's motion is denied because they have not demonstrated that the challenged restraints are permissible under the Sherman Act.

Finally, the Court requests supplemental briefing from the parties on whether the "central warehousing" ban and the prohibition on retailer-to-retailer sales are irreconcilably in conflict with the Sherman Act. Each party should submit a single brief limited to ten pages that addresses both issues (i.e., separate briefs on each issue should not be filed). Supplemental briefs shall be filed by 5:00 p.m. on January 10, 2006. No responses to another party's supplemental brief shall be filed unless directed by the Court.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: December 21, 2005

                                                  s/Marsha J. Pechman
                                                  Marsha J. Pechman
                                                  United States District Judge