UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

  Plaintiff,

  v.

ROGER HOEN, et al.,

  Defendants, and

WASHINGTON BEER AND WINE WHOLESALERS ASSOCIATION,

  Intervenor-Defendant

No. C04-360P

SUPPLEMENTAL ORDER ON SUMMARY JUDGMENT MOTIONS RE: ANTITRUST CLAIMS

This order supplements the Court's earlier Order on Summary Judgment Motions re: Antitrust Claims. (Dkt. No. 113). As directed by the Court, the parties submitted supplemental briefs on whether two policies challenged by Costco in this action are irreconcilably in conflict with federal antitrust law: (1) a ban on central warehousing of beer and wine by retailers; and (2) a ban on retailer-to-retailer sales of beer and wine.

Having reviewed the parties' supplemental briefing, as well as the parties' summary judgment motions, the Court finds that Costco has demonstrated that the central warehousing ban is irreconcilably in conflict with federal antitrust law. The Court further finds that the central

ORDER - 1

warehousing ban should be regarded as a hybrid restraint and that Defendants have not demonstrated that this restraint is shielded by the state action immunity doctrine. However, the question of whether the central warehousing ban may be preserved as a valid exercise of the state's power under the Twenty-first Amendment must be decided at trial.

With respect to the ban on retailer-to-retailer sales, the arguments that Costco presents in its supplemental brief were not fairly raised in its summary judgment motion. As a result, Defendants and the Intervenor-Defendant have not had an opportunity to respond to these arguments, since the supplemental briefs were filed simultaneously. Therefore, the Court will reserve ruling on the retailer-to-retailer ban. The parties should address this issue in their trial briefs.

**Analysis**

A.  Central Warehousing Ban

The "central warehousing ban" challenged by Costco prohibits delivery of beer and wine to a retailer's central warehouse or depot. Costco maintains that this policy is irreconcilably in conflict with federal antitrust law and is therefore pre-empted by the Sherman Act.

As Costco observes, there are obvious economic efficiencies for a chain-store retailer to take deliveries from suppliers at its own central warehouse, rather than at each individual store where the products are ultimately sold. Costco points to a Ninth Circuit decision in which the court noted that central warehousing allows chains to:

> pay less for the products than they would if the supplier made delivery to individual stores. Also, they can consolidate deliveries from the warehouse to individual stores. Thus, their savings due to buying in large lots and arranging for central delivery are greater than their added delivery costs.

First Beverages, Inc. of Las Vegas v. Royal Crown Cola Co., 612 F.2d 1164, 1167 (9th Cir. 1980); see also Adolph Coors Co. v. FTC, 497 F.2d 1178, 1188 (10th Cir. 1974) (noting that central warehousing 'could cut the price of . . . beer to the retailer and consumer"). Costco also maintains that the central warehousing ban prevents it from buying larger quantities of beer and wine than can be

ORDER - 2

stored an individual retail outlet, and therefore restricts Costco's ability to stock products when a supplier offers a special price.

Neither the Liquor Control Board (LCB) Defendants nor the Washington Beer and Wine Wholesalers Association (WBWWA) offer a pro-competitive rationale for the central warehousing ban. Instead, the LCB Defendants maintain that the ban is needed for enforcement and oversight, arguing that "[t]he requirement that product go immediately from the distributor to a retailer's actual premises, as opposed to being stored by a retailer for later sale, is another mechanism of ensuring control of where alcohol is kept and to whom and under what circumstances it is sold." (Dkt. No. 116 at 3-4).

Costco also argues that the central warehousing ban is "part and parcel" of other restraints that the Court has found to conflict with the Sherman Act. In particular, Costco maintains that the ban should be viewed as part of the "delivered pricing" requirement, which requires a wholesaler to charge the same price for beer and wine regardless of whether such products are delivered to the retailer's premises or whether the retailer picks up the products from the wholesaler's premises. As Costco notes, both restraints prevent retailers from reducing their transportation costs for beer and wine and fix the delivery terms of each sale. The delivered pricing requirement enables distributers to charge for delivery costs even if the distributer does not actually deliver the product. In turn, the central warehousing ban prohibits retailers from taking delivery of products at their own central warehouse or distribution center, further restraining the ability of retailers to reduce their transportation costs.[1] The link between the two policies is also suggested by the fact that both restraints are included under the same subparagraph of the Revised Code of Washington, which provides:

---

[1] In their earlier summary judgment briefing, Defendants appeared to acknowledge that the central warehousing ban is linked to the other restraints challenged by Costco. See, e.g., Dkt. No. 96 at 6-7 (noting that the central warehousing ban is included in Washington statutes "in the context of the price posting mandate").

ORDER - 3

> Beer and wine sold as provided in this section shall be delivered by the distributor or an authorized employee either to the retailer's licensed premises or directly to the retailer at the distributor's licensed premises. A distributor's prices to retail licensees shall be the same at both such places of delivery.

RCW 66.28.180(2)(h)(ii).

Costco also maintains that the central warehousing ban is an "output" restraint, a type of restraint that has long been treated as a per se violation of the Sherman Act. Costco maintains that the ban "forces retailers . . . to suppress all use of efficient, computerized freight handling and cross-docking services at their central warehouses." In addition, Costco suggests that the ban reduces the output of beer and wine into the market, since it prevents retailers from buying in volumes that can only be stored at a large warehouse.

Regardless of whether the ban is viewed as part of the "delivered pricing" restraint or as an output restraint, Costco argues that the ban should be regarded as a per se restraint on trade. The Court agrees. Per se restraints are "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry." Miller v. Hedlund, 813 F.2d 1344, 1348 (9th Cir. 1987) (quoting Northern Pacific R. Co. v. United States, 356 U.S. 1, 5 (1958)). Put another way, restraints "whose nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality – they are 'illegal per se.'" Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 692 (1978). Here, the central warehousing ban on its face is plainly anticompetitive. It serves to increase the price of beer and wine by prohibiting beer and wine retailers from engaging in more efficient and cost-effective distribution practices and reinforces other policies that the Court has found to be per se restraints. The LCB Defendants and the WBWWA do not suggest any pro-competitive rationale for the central warehousing ban, nor is any apparent. Therefore, the Court finds that the central warehousing ban is irreconcilably in conflict with the Sherman Act.

ORDER - 4

1   Even if the ban is irreconcilably in conflict with the Sherman Act, the LCB Defendants and the
2   WBWWA argue that the ban should be upheld because: (1) it is a unilateral rather than a hybrid
3   restraint; (2) the ban is shielded by the state action immunity doctrine; and (3) it is a permissible
4   exercise of state power under the Twenty-first Amendment.

5   The Court has previously held that "to the degree that the challenged regulatory scheme is a
6   restraint on trade, it is a hybrid restraint, not a unilateral one." (Dkt. No. 47 at 2). The Court has also
7   held that it is appropriate to look at Washington's regulatory scheme as a whole to determine whether
8   it amounts to a hybrid restraint. Id. at 13 n.3. Therefore, the Court regards the central warehousing
9   ban as a hybrid restraint because it is part of Washington's regulatory scheme.

10  Defendants also have not demonstrated that the central warehousing ban is shielded by the
11  state action immunity doctrine. The central warehousing ban, both individually and as part of
12  Washington's regulatory scheme as a whole, displaces competition and serves to increase the price of
13  beer and wine. As the Court noted in its previous order, the state does not assess the reasonableness
14  of beer and wine prices, nor does the state offer any evidence that it monitors market conditions. As
15  such, Defendants have not shown that the "active supervision" prong of the state action immunity
16  doctrine is satisfied.

17  Finally, Defendants argue that the central warehousing ban may be preserved by the Twenty-
18  first Amendment as a valid exercise of state power to regulate alcohol distribution. For the reasons
19  stated the Court's previous order, this question must be decided at trial, given the fact-intensive nature
20  of a Twenty-first Amendment defense.

21

22  B.   Ban on Retailer-to-Retailer Sales

23  Costco also challenges Washington's policy that requires retailers to buy beer and wine only
24  from licenced wholesalers or the state Liquor Control Board. This policy prevents beer and wine
25  retailers from selling beer and wine to other retailers. In its summary judgment briefing, Costco

ORDER - 5

1  offered only cursory arguments to support its position that this ban constitutes a per se restraint on
2  trade.
3        In its supplemental briefing, Costco now contends that this policy is a per se restraint because
4  it insulates beer and wine distributors from potential competition by Costco.  Costco characterizes this
5  ban as a "customer allocation" restraint, a type of restraint that allocates a category of customers (beer
6  and wine retailers) to one group of competitors (wholesalers).  Costco points to several cases holding
7  that customer allocation restraints are per se violation of the Sherman Act.  See, e.g., United States v.
8  Topco Assocs., Inc., 405 U.S. 596, 612 (1972) (striking down restrictions on the right of Topco
9  members to resell products because such restrictions "amount to regulation of the customers to whom
10 members of Topco may sell"); United States v. Goodman, 850 F.2d 1473, 1476 (11th Cir. 1988)
11 ("customer allocation agreement alone is a per se violation"); United States v. Coop. Theatres of
12 Ohio, Inc., 845 F.2d 1367, 1372 (6th Cir. 1988) ("customer allocation . . . . is the type of 'naked
13 restraint' which triggers application of the per se rule of illegality").
14       However, Costco did not offer this "customer allocation" theory in its previous summary
15 judgement briefing, but instead raised it for the first time in its supplemental briefing.  As a result, the
16 LCB Defendants and the WBWWA have not had an adequate opportunity to address this argument,
17 since the parties submitted their supplemental briefs simultaneously.  Therefore, the Court declines at
18 this time to reach the question of whether the retailer-to-retailer ban is a per se restraint.  The parties
19 should address Costco's "customer allocation" arguments in their trial briefs.

20                                        **Conclusion**

21       The Court finds that Costco has demonstrated that the central warehousing ban is
22 irreconcilably in conflict with federal antitrust law.  The Court also finds that the ban is hybrid in
23 nature and that Defendants have not demonstrated that the ban is shielded by the state action immunity
24 doctrine.  The question of whether the ban may be preserved as a valid exercise of state power under
25 the Twenty-first Amendment will be decided at trial.

ORDER - 6

1   The Court reserves ruling on whether the ban on retailer-to-retailer sales is irreconcilably in
2   conflict with federal antitrust laws.  Costco's argument that this policy is an impermissible "customer
3   allocation" restraint was not raised in its initial summary judgment briefing, and LCB Defendants and
4   the WBWWA should have an opportunity to respond to this argument.   Therefore, parties should
5   address this issue in their trial briefs.

6   The clerk is directed to provide copies of this order to all counsel of record.

7   Dated: March 7, 2006.

            s/Marsha J. Pechman
            Marsha J. Pechman
            United States District Judge

ORDER - 7