1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

           Plaintiff,

    v.

ROGER HOEN, et al.,

           Defendants, and

WASHINGTON BEER AND WINE
WHOLESALERS ASSOCIATION,

           Intervenor-Defendant

No. C04-360P

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

      This matter was tried before the Court from March 21 to March 30, 2006.  Plaintiff Costco

Wholesale Corporation challenges various Washington state laws and regulations regarding the sale

and distribution of beer and wine, particularly policies that tend to increase the average cost of beer

and wine to retailers.  Defendants are members of the Washington State Liquor Control Board (LCB).

The Washington Beer and Wine Wholesalers Association (WBWWA) was granted leave to intervene

in this matter as an Intervenor-Defendant.

      In prior orders, the Court held that most of the restraints challenged by Costco are

irreconcilably in conflict with federal antitrust law, as embodied in the Sherman Act of 1890.  At trial,

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

the primary issue was whether the challenged restraints may be upheld as a valid exercise of state power under the Twenty-first Amendment to the United States Constitution, despite their anti-competitive nature.

The Sherman Act reflects a strong federal policy in favor of competition.  At the same time, the Twenty-first Amendment provides each state with broad authority to regulate alcohol products in order to advance certain "core interests," such as promoting temperance, ensuring orderly market conditions, and raising revenue.  This case requires the Court to consider whether the challenged restraints are effective in advancing the state's core interests under the Twenty-first Amendment and whether the state's interests outweigh the federal interests in promoting competition.

For the most part, the Court finds that the policies challenged by Costco are not effective in advancing the state's core interests under the Twenty-first Amendment.  The Court also finds that the state's interests do not trump the federal interest in promoting competition even when the restraints may be minimally effective in advancing the state's interests.

Therefore, having considered the evidence, testimony, and arguments presented by the parties, the Court finds and concludes as follows:

(1)     The following state restraints are preempted by the federal Sherman Act and are not shielded by the Twenty-first Amendment:

      (a)     Policies that require beer and wine distributors and manufacturers to "post" their prices with the state and to "hold" those prices for a full month;

      (b)     Policies that require beer and wine distributors to charge uniform prices to all retailers;

      (c)     Prohibitions on selling beer and wine to retailers on credit;

      (d)     Prohibitions on volume discounts for beer and wine sales;

      (e)     Policies that require beer and wine distributors to charge the same "delivered" price to all retailers, regardless of the actual delivery costs;

(f)     Prohibitions on central warehousing of beer and wine by retailers; and

(g)     Policies that require a 10% minimum mark-up on sales of beer and wine from producers to wholesalers, as well as a 10% minimum mark-up on sales of beer and wine from distributors to retailers.

(2)     Costco also challenges Washington's ban on retailers selling beer and wine to other retailers. The Court finds that this policy is a unilateral restraint on trade imposed purely by the state of Washington. As a unilateral restraint, it does not run afoul of the Sherman Act. Therefore, the Court dismisses Costco's antitrust claims regarding the ban on retailer-to-retailer sales of beer and wine.

(3)     The Court will stay the judgment in this matter for a period of 30 days while Defendants consider whether to file a notice of appeal in this matter. If Defendants decide to pursue an appeal and wish to seek a extension of the stay pending appeal, they should move promptly for such an extension.

The Court's findings of fact and conclusions of law are set forth below.

**Framework for Analysis**

Defendants[1] argue that the challenged restraints are permissible exercises of state power under the Twenty-first Amendment to the United States Constitution. The Fourth Circuit has characterized the framework for analyzing a Twenty-first Amendment defense as a three-part inquiry:

(1)     First, the court should examine the expressed state interest and the closeness of that interest to those protected by the Twenty-first Amendment.

(2)     Second, the court should examine whether, and to what extent, the regulatory scheme serves its stated purpose . . . . Simply put, is the scheme effective?

(3)     Finally, the court should balance the state's interest . . . (to the extent that interest is actually furthered by the regulatory scheme) against the federal interest in promoting competition under the Sherman Act.

---

[1]   For ease of reference, the Court refers to the LCB and WBWWA collectively as "Defendants."

1    TFWS, Inc. v. Schaefer, 242 F.3d 198, 213 (4th Cir. 2001); see also Miller v. Hedlund, 813 F.2d

2    1344, 1352 and n.7 (9th Cir. 1987) (similar).

3           Defendants maintain that the challenged restraints serve three state interests protected by

4    Twenty-first Amendment: (1) promoting temperance; (2) ensuring orderly market conditions; and (3)

5    raising revenue.

6                                    **Findings of Fact**

7           1.      Costco challenges the following policies regarding the sale and distribution of beer and

8    wine in Washington:

9           (a)    ***"Posting" Requirement***: Washington requires manufacturers and distributors

10                  of beer and wine to "post" the prices of their products with the LCB.  RCW

11                  66.28.180(2)-(3); WAC 314-20-100(2) & (5); WAC 314-24-190(2) & (5).  The

12                  posted prices are publicly available after they take effect.

13          (b)    ***"Holding" Requirement***:   Beer and wine manufacturers and distributors must

14                  "hold" their posted prices for a full month.  WAC 314-20-100(2) & (5); WAC

15                  314-24-190(2) & (5).  That is, they cannot change their posted prices for an

16                  entire calendar month.

17          (c)    ***Uniform Pricing Requirement***:   Distributors must sell their beer and wine

18                  products to every retailer at the same price that they have posted with the state.

19                  RCW 66.28.170; RCW 66.28.180(2) & (3); WAC 314-12-140; WAC 314-20-

20                  100(2), (4) & (5); WAC 314-24-190(2), (4) & (5).

21          (d)    ***Ban on Credit Sales***:  Distributors may not sell beer or wine to retailers on

22                  credit.  WAC 314-13-015; RCW 66.28.010; WAC 314-20-090; WAC 314-12-

23                  140(3).

24

25

(e) **Ban on Volume Discounts**: Distributors may not offer volume discounts when selling beer or wine to retailers. RCW 66.28.180(2)(d) & (3)(b); RCW 66.28.170; WAC 314-12-140(3).

(f) **"Delivered Pricing" Requirement**: Distributors must sell beer and wine at the same "delivered" price to all retailers, even if the retailer pays the freight and picks up the goods itself. RCW 66.28.180(2)(h)(ii).

(g) **"Central Warehousing" Ban**: Washington prohibits retailers from storing or taking delivery of beer and wine at a central warehouse. RCW 66.28.180(2)(h)(ii). Washington also prohibits retailers from operating a warehouse that includes wine (RCW 66.24.185(4)), and has adopted a regulation that limits the output of wine from warehouses. WAC 314-24-220(5).

(h) **"Minimum Mark-Up" Requirements**: With limited exceptions, manufacturers of beer and wine must charge at least 10 percent more than their cost of production when they sell products to distributors, and distributors must charge at least 10 percent more than their cost of acquisition when they resell beer and wine to retailers. RCW 66.28.010(2); RCW 66.28.180(2)(d) & (3)(b).

(i) **Ban on Retailer-to-Retailer Sales**: Washington prohibits retailers from selling beer and wine to other retailers.[2] RCW 66.28.070; WAC 314-13-010.

---

[2] As discussed in the conclusions of law below, the Court concludes that Costco's challenge to Washington's ban on retailer-to-retailer sales of beer and wine should be dismissed as a matter of law because this policy is a unilateral restraint and is not preempted by the Sherman Act. As a result, the Court's discussion of the "challenged restraints" in the findings of fact should not be construed as including the ban on retailer-to-retailer sales.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 5

1

<u>Overview of Washington's Regulatory System</u>

2   2.   Following the repeal of Prohibition in 1933, Washington adopted the "Washington

3 State Liquor Act," which the parties also referred to as the "Steele Act."  This legislation, which took

4 effect in January 1934, established the Washington State Liquor Control Board (LCB).  The Liquor

5 Act directed the LCB to establish "state liquor stores."  Consistent with this mandate, the LCB

6 operates liquor stores throughout the state that sell distilled spirits, as well as beer and wine.  Private

7 retailers such as Costco may also sell beer and wine, but may not sell spirits.

8   3.   Some of the challenged restraints have been in effect, in varying forms, since the 1930s.

9 Other restraints have been added more recently.

10   4.   With the adoption of the Liquor Act in 1934, Washington adopted a "three-tier" system

11 for the distribution of beer, a system that was later extended to wine.  A "three tier" system consists of

12 the following levels: manufacturer, distributor, and retailer.  Under a three-tier system, manufacturers

13 sell products to distributors, who in turn sell the products to retailers.

14   5.   The three-tier system in Washington has changed since 1934.  For instance, prior to

15 this litigation the Washington State Legislature allowed Washington beer and wine manufacturers (but

16 not out-of-state manufacturers) to sell their products directly to retailers, without using separate

17 distributors.  Costco challenged this policy to the extent that it prevented out-of-state manufacturers

18 from selling beer and wine directly to retailers.

19   6.   In December 2005, the Court held that Washington's policy of allowing in-state beer

20 and wine manufacturers to sell their products directly to retailers, while prohibiting out-of-state

21 manufacturers from doing the same, violated the Commerce Clause to the United States Constitution.

22 To ensure equal treatment of in-state and out-of-state manufacturers, the Court provided the State

23 Legislature with several months to either withdraw the direct sales privilege from in-state

24 manufacturers or extend the direct sales privilege to out-of-state manufacturers.  The day before the

25 trial in this matter ended, Washington's governor signed legislation that extended the direct sales

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

1  privilege to out-of-state retailers.  This legislation includes a "sunset" provision, meaning that most

2  provisions will expire by June 30, 2008 unless they are renewed.  See 2006 Wash. Sess. Laws 302.

3       7.    Many of the restraints challenged in this case are codified under RCW 66.28.180.  This

4  section of the Revised Code of Washington includes the following "intent" language, which was

5  adopted in 1995:

> Intent:  This section is enacted, pursuant to the authority of this state under the twenty-first
> amendment to the United States Constitution, to promote the public's interest in fostering the
> orderly and responsible distribution of malt beverages and wine towards effective control of
> consumption; to promote the fair and efficient three-tier system of distribution of such
> beverages; and to confirm existing [Liquor Control] board rules as the clear expression of state
> policy to regulate the manner of selling and pricing of wine and malt beverages by licensed
> suppliers and distributors.

10  RCW 66.28.180(1).  This language was proposed by the WBWWA and subsequently adopted by the

11  Legislature.

12       8.    The LCB currently describes its mission as follows: "The mission of the Liquor Control

13  Board is to serve the public by preventing the misuse of alcohol and tobacco through controlled

14  distribution, enforcement, and education; and provide excellent customer service by operating

15  efficient, convenient and profitable retail stores."

16       9.    Defendants suggest that Washington's regulatory system should be regarded as

17  reasonable because there has been a "lack of significant concern voiced by any of the various groups

18  interested in the regulation of beer and wine distribution and sales" and an "absence of any public

19  outcry for more or less regulation, or for higher or lower prices for beer and wine."  (Dkt. No. 147 at

20  9).  However, through this lawsuit Costco has plainly expressed significant concern about various

21  aspects of the regulatory system.  In addition, concerns about abusive alcohol consumption in recent

22  years has led to the establishment of Alcohol Impact Areas in certain parts of the state.

23  <u>Temperance</u>

24       10.    The Washington State Legislature has not used the term "temperance" to describe the

25  purpose of any of the challenged restraints.  However, the Legislature has stated RCW 66.28.180 is

1  intended to promote "effective control of consumption," a statement that may be interpreted as an

2  expression of the state's interest in promoting temperance.  In the context of alcohol consumption, the

3  term "temperance" may be understood as "restrained or moderate indulgence."  Black's Law

4  Dictionary (5th ed. 1979).

5       11.    Washington does not seek to promote "temperance" by promoting abstention or by

6  reducing overall consumption of beer and wine.  Indeed, the state actively promotes its domestic beer

7  and wine industries and seeks to serve overall lawful demand for beer and wine.

8       12.    The parties have stipulated that "[o]n average, prices of beer and wine in Washington

9  are somewhat higher than they would be in the absence of the restraints" challenged in this lawsuit.

10  (Dkt. 122 at 3).  The amount of this average increase in beer and wine prices was not clearly

11  established at trial.  Defendants maintain that the challenged restraints promote temperance by

12  increasing the average price of beer and wine in Washington state.

13       13.    Although the challenged restraints result on average in somewhat higher prices for beer

14  and wine, this fact does not mean that all retailers pay higher prices for beer and wine than they would

15  without the challenged restraints.  Instead, the evidence suggests that the restraints allow some

16  retailers to pay lower prices for beer and wine than they would without the restraints, while other

17  retailers pay higher prices that they would without the restraints.

18       14.    In general, small retailers and retailers in remote locations tend to obtain lower prices

19  for beer and wine than they would without the restraints because distributors must charge uniform

20  prices to all retailers, regardless of actual delivery costs or the volume of products purchased.  In

21  effect, the restraints tend to make beer and wine more affordable for higher-cost retailers (such as

22  small convenience stores or remote retailers), while raising prices for other retailers (such as large

23  retailers).

24       15.    The Court is not persuaded that the state effectively promotes temperance by lowering

25  the cost of beer and wine for some retailers, while raising the price of beer and wine for other retailers.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 8

1   Indeed, this policy would appear to increase consumption by making it less expensive for consumers

2   to obtain beer and wine at the most convenient and easily accessible locations.

3         16.     There is no persuasive evidence that the purpose of any of the challenged restraints was

4   to promote temperance by raising average beer and wine prices.  Prior to this litigation, neither the

5   State Legislature nor the LCB expressed such a purpose.  LCB member Vera Ing testified that it is not

6   the LCB's policy to generally raise prices in order to reduce consumption of beer and wine.  (Ing.

7   Dep. at 17).  Ms. Ing also testified that the LCB has "no mandate to increase or eliminate or reduce

8   consumption."  (Ing Dep. at 24).  When the LCB was asked in interrogatories to explain how the

9   challenged restraints were necessary, effective, or sufficient in promoting temperance, the LCB

10   responded by stating that the question "assum[ed] facts not in evidence, specifically, that the

11   prohibitions and requirements at issue in this lawsuit have the goal . . . of promoting temperance."

12   (Ex. 245 at 4).

13         17.     The LCB has sometimes opposed efforts to increase the prices for wine at state liquor

14   stores.  In 1981, for instance, the LCB opposed a legislative proposal to increase wine prices in state

15   stores, noting that "state liquor stores sell wine cheaper than grocery stores" and that under the

16   proposed measure "[c]onsumers would suffer.  Right now an estimated 500,000 people . . . choose to

17   buy their wine at state stores because prices are lower."  (Ex. 60).  Similarly, the LCB opposed a

18   proposal in 1975 to eliminate the state's role in wine sales, arguing that "[i]f the move to take the state

19   out of the wine business is successful, the consumer will pay higher prices for wine."  (Ex. 51).  Such

20   statements do not reflect a consistent view by the LCB that higher wine prices are desirable or

21   necessary to promote temperance.

22         18.     The Court is not persuaded that the challenged restraints are effective in promoting

23   temperance, whether viewed individually or as a whole.  To be sure, the evidence at trial indicated that

24   Washington has one of the lowest rates in the country for per capita ethanol consumption per drinker,

25   even though Washington ranks well above the national average in terms of the percentage of the

1   population who consume alcohol.  As a result, it appears Washington residents who consume alcohol

2   tend to drink more moderately than alcohol consumers who live in most other states.  However, there

3   is no persuasive evidence that the Washington's relatively low rates of ethanol consumption per

4   drinker are due to any of the challenged restraints, either viewed individually or as a whole.

5         19.    There has been little if any research or careful study on whether the type of restraints

6   challenged in this litigation are effective in promoting temperance.  Dr. Frank Chaloupka, an expert

7   witness offered by Defendants, indicated that he was not aware of any published studies regarding the

8   impact of the types of policies at issue in this case on alcohol consumption.  (Ex. 581 at 16).  In his

9   writings, Dr. Chaloupka has also noted that "[i]n general, resulting in part from legal challenges

10   initiated by alcoholic beverage wholesalers or retailers, state laws and regulations limiting competition

11   in the alcoholic beverage markets have been relaxed over time."  He indicates that "empirical evidence

12   on the impact of changes in these policies on alcoholic beverage prices, drinking, and its consequences

13   is almost nonexistent.  Clearly, more research is needed to fully understand the impact of the complex

14   and varied policies that affect alcoholic beverage distribution, marketing, and pricing on the retail

15   prices of these beverages."  (Ex. 337 at 547).

16         20.    The analyses offered by Dr. Chaloupka do not provide convincing evidence that the

17   challenged restraints are effective in promoting temperance.  In these analyses, Dr. Chaloupka

18   concluded that the elimination of certain policies in Nebraska (price posting for wine and spirits and a

19   ban on quantity discounts) and Delaware (a ban on quantity discounts on beer, wine, and spirits)

20   resulted in higher rates of overall alcohol consumption than would have resulted if the restraints had

21   remained in place.  However, wine consumption in Nebraska actually decreased significantly after the

22   restraints in that state were eliminated.  In addition, Delaware is a small state located near

23   Philadelphia, meaning that cross-border purchases of alcohol likely result in a significant percentage of

24   alcohol sold in the state.  The Court finds the critique of Dr. Chaloupka's analyses offered by

25   Plaintiff's expert Michael Moore to be persuasive.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 10

21.     Washington has adopted a number of policies that may contribute to the state's moderate rates of ethanol consumption per drinker.  Among other things, the state exercises monopoly control over wholesale and retail sales of spirits, imposes relatively high excise taxes on beer and wine, has adopted policies targeting drinking and driving and youth access to alcoholic beverages, and has adopted rules allowing the implementation of "Alcohol Impact Areas."  As Plaintiff's expert Michael Moore notes, "it is impossible to separately identify the effects of the policies at issue [in this litigation] from all of the other polices" adopted by Washington.  (Ex. 240 at 16).

22.     Even if the Court were to find that the challenged restraints had some effect in promoting temperance by raising average beer and wine prices, the Court finds that the state's interest in promoting temperance in this manner does not outweigh the federal interest in promoting competition under the Sherman Act.  If the State desires to promote temperance by artificially increasing beer and wine prices, the State could readily achieve that goal in a manner that does not run afoul of the Sherman Act.  Most obviously, the State could adopt higher excise taxes on beer and wine.

<u>Orderly Market Conditions</u>

23.     The Washington Legislature has expressed its intent "to promote the public's interest in fostering the orderly and responsible distribution of malt beverages and wine. . . ."  RCW 66.28.180(1).  This statement can be construed as an expression of the Washington Legislature's intent to promote orderly market conditions for beer and wine.

24.     It is not clear what the term "orderly market conditions" or "orderly distribution" encompasses.  As one court recently noted that "[a]s for 'ensuring orderly markets,' we are not sure what that phrase means."  <u>Bainbridge v. Turner</u>, 311 F.3d 1104, 1115 (11th Cir. 2002).

25.     Defendants did not provide a clear or consistent definition of the terms "orderly marketing" or "orderly distribution."  LCB member Vera Ing defined "orderly distribution" as the "three-tier system" and stated that orderly distribution "would be the ability to supervise" and  "clearly

1   articulated procedures."  (Ing Dep. at 167).  Dr. Kenneth Casavant, an economist, defined "orderly

2   marketing" as "asking the market to have the prices reflect the cost of production" and to have the

3   market avoid "gluts and scarcities."  In their proposed findings and conclusions of law, Defendants

4   suggest that the Court should find that "orderly marketing of beer and wine refers to a system that

5   promotes relative price uniformity, relative price stability, and relatively wide availability with respect

6   to beer and wine."  (Dkt. No. 147 at 6).

7          26.     Under a  "three-tier" system, beer and wine is sold from a manufacturer to a

8   distributor, who in turn sells the product to a retailer.  A three-tier system does not require the

9   "posting" and "holding" of beer and wine prices, nor does it require uniform prices to be charged to all

10  retailers or "delivered pricing" restraints.  Similarly, a three-tier system does not require minimum

11  mark-ups, a ban on credit sales and volume discounts, or a ban on central warehousing of beer and

12  wine by retailers.

13         27.     The challenged restraints are not effective in ensuring that prices of beer and wine

14  reflect the cost of production.  Washington law prohibits below-cost sales of beer and wine, and this

15  restraint is not challenged in this litigation.  To be sure, the challenged restraints – in particular, the

16  price "posting" requirement – may aid the LCB in enforcing Washington's ban on below-cost sales of

17  beer and wine.  For instance, if the LCB receives complaints that a distributor is selling products

18  below cost, the LCB can review the distributor's posted price and compare it to the price charged to

19  an individual retailer.  However, the state could enforce its below-cost sales law without requiring

20  posting of prices.  Most obviously, the state could simply require suppliers and distributors to keep all

21  purchase and sales records on site for inspection by the LCB.

22         28.     There is little evidence that the challenged restraints are effective in preventing "gluts"

23  of beer and wine in Washington.  At trial, Defendants appeared to suggest that the 10 percent

24  minimum mark-ups prevent gluts in the market.  However, the evidence at trial indicated that

25  distributors typically mark-up the prices of beer and wine products by more than 10 percent.  Indeed,

1    Defendants state that "[t]he minimum mark-up requirements have virtually no impact on prices

2    actually charged, because suppliers and distributors routinely mark their products up by far more than

3    10%." (Dkt. No. 147 at 13).  The 10 percent minimum mark-up may prevent distributors from

4    "dumping" beer products on the market at lower prices when the products are nearing their expiration

5    dates.  However, the evidence does not suggest that the amount of beer that may be sold in such

6    situations is sufficient to create any appreciable "gluts" in the marketplace.

7         29.    The Court is not persuaded that the challenged restraints are effective in preventing

8    scarcities in the beer or wine markets in Washington state.  If the restraints were not in place, there is

9    no apparent reason why beer and wine would not distributed in an orderly manner throughout the

10   state, just like other common consumer items.  There is no evidence that states that have not adopted

11   policies similar to Washington have experienced scarcities of beer or wine.

12        30.    The challenged restraints ensure that all retailers are able to purchase beer and wine

13   from distributors at the same prices offered to larger retailers.  The uniform pricing requirement (as

14   reinforced by the delivered pricing requirement, as well as the bans on volume discounts, credit sales,

15   and central warehousing) ensures that a distributor must charge the same price for a particular product

16   to every retailer, regardless of actual delivery costs or other factors that may justify different prices.  In

17   the absence of the restraints, it is likely that smaller and more remote retailers would tend to pay

18   somewhat higher prices for beer and wine than larger and more economically-efficient retailers.

19        31.    The Court regards these restraints as only minimally effective in promoting the state's

20   interest in "orderly market conditions."  In a sense, the challenged restraints make the beer and wine

21   market in Washington somewhat more "orderly" by ensuring that all licensed retailers, regardless of

22   their size, location, or efficiency, are able to purchase beer and wine at the same price from any given

23   distributor.  However, there is no persuasive evidence that smaller or remote retailers would be unable

24   to survive economically without the challenged restraints or that they would otherwise be unable to

25   purchase or profitably sell beer or wine.  The Court finds persuasive Costco's argument that all

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 13

1  manner of goods, from potato chips to chewing gum, find their way to even the most remote parts of

2  the state.

3      32.    To the limited extent that the challenged restraints may be effective in promoting the

4  state's interest in "orderly market conditions" by requiring uniform pricing to retailers, the Court finds

5  that the state's interests are outweighed by the federal interest in promoting competition.  As the

6  Supreme Court has noted, a state's "unsubstantiated interest in protecting small retailers 'simply [is]

7  not of the same stature as the goals of the Sherman Act."  <u>324 Liquor Corp. v. Duffy</u>, 479 U.S. 335,

8  350 (1987).

9                                    <u>Raising Revenue</u>

10     33.    The Court finds that the challenged restraints, viewed either individually or as a whole,

11 are not effective in advancing the state's interest in raising revenue.  There is no persuasive evidence

12 that the challenged restraints play an appreciable role in raising revenue for the state or in ensuring

13 efficient collection of taxes.  Taxes on alcohol products can be collected at both the retailer and

14 distributor level, just as sales taxes for other goods.

15     34.    If the state in fact wishes to promote temperance by artificially increasing the price of

16 beer and wine, the challenged restraints appear to result in a significant amount of lost potential

17 revenue for the state.  The state could increase beer and wine prices by raising excise taxes, an action

18 that would increase the state's revenues.  By contrast, the challenged restraints increase the average

19 price of beer and wine in a manner that leaves most of the increased revenue to beer and wine

20 wholesalers, rather than the state.  As Defendants' expert Frank Chaloupka testified, "somebody gets

21 the money from the higher prices" and "the majority of the surplus would end up with the

22 wholesalers."

23

24

25

1

**Conclusions of Law**

2

Ban on Retailer-to-Retailer Sales

3    1.    In general, Washington prohibits retailers from selling beer and wine to other retailers.

4   This restraint is imposed unilaterally by the state of Washington.  Unlike the other restraints at issue in

5   this case, this policy does not grant a degree of private regulatory power to private actors.  "A

6   restraint imposed unilaterally by government does not become concerted action within the meaning of

7   the [Sherman Act] simply because it has a coercive effect upon parties who must obey the law."

8   Fisher v. City of Berkeley, 475 U.S. 260, 266 (1986).  Such unilateral restraints on trade imposed

9   purely by the state do not run afoul of the Sherman Act.  Therefore, the Court dismisses Costco's

10  claims regarding the ban on retailer-to-retailer sales of beer and wine.

11

Other Challenged Restraints

12   2.    On summary judgment, the Court previously determined that the remaining restraints

13  challenged by Costco are irreconcilably in conflict with the federal Sherman Act, are "hybrid" in

14  nature, and are not shielded by the state action immunity doctrine.  See Dkt. Nos. 113 and 119.  The

15  evidence at trial confirmed these determinations.  For the reasons stated in its prior summary judgment

16  orders, the Court finds that Costco has met its burden on the issues for which it has the burden of

17  proof.

18   3.    As an affirmative defense, Defendants argue that the challenged restraints may be

19  preserved as valid exercises of state power under the Twenty-first Amendment to the Constitution.

20  Because this is an affirmative defense, the Court concludes that Defendants bear the burden of

21  demonstrating that the challenged restraints are shielded by the Twenty-first Amendment.  See, e.g.,

22  Bainbridge v. Turner, 311 F.3d 1104, 1115 n.16 (state has burden of proof on a Twenty-first

23  Amendment defense).

24   4.    "The federal interest in enforcing the national policy in favor of competition is both

25  familiar and substantial."  California Retail Liquor Dealers Ass'n v. Midcal Aluminum, 445 U.S. 97,

1   110 (1980).  As the Supreme Court has noted, "[a]ntitrust laws in general, and the Sherman Act in

2   particular, are the Magna Carta of free enterprise."  Id. (quoting United States v. Topco Assocs., Inc.,

3   405 U.S. 596, 610 (1972)).  Although the Sherman Act is a statute rather than a constitutional

4   provision, "Congress 'exercis[ed] all the power it possessed' under the Commerce Clause when it

5   approved the Sherman Act."  Midcal, 445 U.S. at 111.  As a result, courts "must acknowledge the

6   importance of the Act's procompetition policy."  Id.

7        5.      The Twenty-first Amendment, which repealed Prohibition, provides that "[t]he

8   transportation or importation into any State, Territory, or possession of the United States for delivery

9   or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."  This

10  provision has been construed as "grant[ing] the State virtually complete control over whether to

11  permit importation or sale of liquor and how to structure the liquor distribution system."  Midcal, 445

12  U.S. at 110.

13       6.      The Supreme Court has emphasized that "there is no bright line between federal and

14  state powers of liquor."  Id.  In cases where the federal and state powers are in conflict, "[t]he

15  question in each case is 'whether the interests implicated by a state regulation are so closely related to

16  the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding

17  that its requirements directly conflict with express federal policies."  324 Liquor Corp. v. Duffy, 479

18  U.S. 335, 347 (1987).  The Supreme Court has identified several "core interests" reserved to the

19  states under the Twenty-first Amendment.  These interests include "promoting temperance, ensuring

20  orderly market conditions, and raising revenue."  North Dakota v. United States, 495 U.S. 423, 432

21  (1990).

22       7.      The Court concludes that the challenged restraints are not preserved by the Twenty-

23  first Amendment to the Constitution.  As discussed above, these restraints are either ineffective or only

24  of minimal effectiveness in promoting temperance, ensuring orderly markets, or raising revenue.   To

25  the extent that the restraints may have a minimal effect in advancing the state's core interests under the

1  Twenty-first Amendment, the state's interests do not outweigh the federal interest in promoting

2  competition under the Sherman Act.  Therefore, the Court concludes that the challenged restraints are

3  preempted by the Sherman Act.

4        8.     The LCB should be enjoined from enforcing the following policies:

5            a.     "**Post and Hold**" policies that require manufacturers and distributors of beer

6                and wine to "post" the prices of their products with the LCB and to "hold"

7                those prices for a full calendar month.  See RCW 66.28.180(2)-(3); WAC 314-

8                20-100(2) & (5); WAC 314-24-190(2) & (5).

9            b.     **Uniform Pricing** polices that require beer and wine distributors to sell their

10                products to every retailer at the same price.  See RCW 66.28.170; RCW

11                28.180(2) & (3); WAC 314-12-140; WAC 314-20-100(2), (4) & (5); WAC

12                314-24-190(2), (4) & (5).

13            c.     **Bans on Credit Sales** of beer and wine.  See WAC 314-13-015; RCW

14                66.28.010; WAC 314-20-090; WAC 314-12-140(3).

15            d.     **Ban on Volume Discounts** for sales of beer and wine.  See RCW

16                66.28.180(2)(d) & 3(b); RCW 66.28.170; WAC 314-12-140(3).

17            e.     "**Delivered Pricing**" policies that require distributors to sell beer and wine at

18                the same "delivered" price to all retailers, even if the retailer pays the freight

19                and picks up the goods itself.  See RCW 66.28.180(2)(h)(ii).

20            f.     "**Central Warehousing**" **Bans** that prohibit retailers from storing beer and

21                wine at a central warehouse or from operating a warehouse that includes wine,

22                see RCW 66.28.180(2)(h)(ii) and RCW 66.24.185(4), as well as restrictions

23

24

25

1    that would limit the output of wine from a central warehouse operated by a

2    retailer.  See WAC 314-24-220(5).[3]

3         g.    **Minimum Mark-Up** policies that impose mandatory 10 percent mark-ups on

4              the sale of beer and wine by manufacturers and distributors.  See RCW

5              66.28.010(2); RCW 66.28.180(2)(d) & (3)(b).

6    9.    The Court may enjoin antitrust violations pursuant to 15 U.S.C. § 26.  The Court finds

7    that it is not necessary to reach Costco's request for relief for antitrust violations under 42 U.S.C. §

8    1983.[4]

9                              **Stay of Judgment**

10        The Court's order will require some significant changes in Washington's existing system for

11   beer and wine sales and distribution.  As a result, the Court will stay the judgment in this case during

12   the 30-day period allotted for Defendants to file a notice of appeal.  This will give the state an

13   opportunity to assess its options while contemplating appeal.  If Defendants wish to seek an extension

14   of a stay beyond that time frame, they should file a motion to do so.

15

16        [3] The restraints that prevent retailers from operating warehouses that include wine (RCW
     66.24.185(4)) and limit output from wine warehouses (WAC 314-24-220(5)) were not explicitly
17   addressed in the Court's previous orders on summary judgment motions, largely because Costco did
     not identify those restraints in its complaint.  However, Costco raised both restraints in its summary
18   judgment briefing and the Court granted an oral motion by Costco at trial to conform the pleadings to
     the evidence.  Therefore, to the extent that RCW 66.24.185(4) and WAC 314-24-220(5) would
19   prevent retailers from operating central warehouses that include wine and would limit the output of
     wine from a central warehouse operated by a retailer, the Court finds that these restraints are
20   analytically indistinct from those specifically mentioned the Court's previous summary judgment
     rulings.
21

22        [4] The parties have provided virtually no briefing on Costco's § 1983 claims.  It is questionable
     in any case that a § 1983 claim may be based on violations of federal antitrust laws.  See, e.g.,
23   Racetrac Petroleum, Inc. v. Prince George's County, 601 F. Supp. 892, 913 n.29 (D. Md. 1985) ("the
     Court does not believe that violation of the antitrust laws may be the basis for a § 1983 action");
24   Bonollo Rubbish Removal, Inc. v. Town of Franklin, 886 F. Supp. 955, 965-66 (D. Mass. 1995)
     (similar); see generally City of Rancho Palos Verdes v. Abrams, 544 U.S. 113 (2005) (discussing
25   limitations on maintaining Section 1983 actions based on violations of federal law).

**Entry of Judgment on Costco's Constitutional Claim**
**Regarding Direct Sales by In-State and Out-of-State Manufacturers**

In a prior order, the Court held that Washington's policy of allowing in-state beer and wine manufacturers to sell their products directly to retailers, while prohibiting out-of-state manufacturers from doing the same, violates the Commerce Clause to the United States Constitution. The Court stayed entry of judgment on that claim to permit the Washington Legislature a reasonable period of time to either withdraw the direct sales privilege from in-state manufacturers or to extend the privilege to out-of-state manufacturers. The Legislature responded by passing a measure that extended the direct sales privilege to out-of-state manufacturers. As such, Costco's challenge to the ban on direct sales by out-of-state manufacturers is arguably moot.

At closing arguments, however, Costco requested that the Court enter a final judgment holding that Washington's former ban on direct sales of beer and wine by out-of-state manufacturers violates the Commerce Clause. Both Costco and the WBWWA suggested that the challenge to this former policy is not moot because the legislation signed by the Governor includes a "sunset provision," meaning that the legislation will expire by June 30, 2008 unless it is renewed.

The Ninth Circuit has noted that "[o]ur circuit, perhaps following the lead of the Supreme Court, has issued somewhat confused pronouncements regarding mootness generally, and mootness in the context of repealed or amended statutes in particular." Jacobus v. Alaska, 338 F.3d 1095, 1103 (9th Cir. 2003). On the one hand, the Ninth Circuit has announced that "[a]s a general rule, if a challenged law is repealed or expires, the case becomes moot." Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir. 1994). At the same time, the Supreme Court has held that "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982) (finding that challenge to city ordinance was not mooted by changes in challenged law). The Ninth Circuit has indicated that "[o]ne factor to consider in deciding

1  if a case is moot as a result of subsequent statutory amendments is whether the governmental entity is

2  likely to reenact the offending provision" Coral Const. Co. v. King County, 941 F.2d 910, 928 (9th

3  Cir. 1991).  In addition, "even if the government is unlikely to reenact the provision, a case is not

4  easily mooted where the government is otherwise unconstrained should it later desire to reenact the

5  provision." Id.

6       Here, the State Legislature has voluntarily ended – at least for the next two years –

7  Washington's policy of allowing in-state beer and wine manufacturers to sell products directly to

8  retailers, while denying that privilege to out-of-state manufacturers.  However, it is apparent the State

9  Legislature only adopted this change because this Court granted summary judgment on Costco's claim

10  that the former policy violated the Commerce Clause.  The State Legislature also included a sunset

11  provision in the legislation, meaning that the previous system of discriminating between in-state and

12  out-of-state manufacturers will return unless the Legislature affirmatively acts in the future.  Given

13  these circumstances, the Court finds that Costco's challenge to Washington's former policy of

14  allowing only in-state manufacturers to sell beer and wine directly to retailers is not moot.  The State

15  Legislature has only adopted a temporary change in the challenged policy as a result of this litigation.

16  As such, there is a reasonable likelihood that the former policy may be re-enacted, either through

17  action or inaction by the Legislature.  Therefore, the Court will direct the entry of final judgment on

18  Costco's challenge to this policy.

19  **Conclusion**

20       The restraints challenged by Costco are plainly anti-competitive, and there is no dispute that

21  these restraints increase the average cost of beer and wine in Washington.  Defendants argue that the

22  restraints should nonetheless be upheld as a valid exercise of the state's power under the Twenty-first

23  Amendment, notwithstanding their anti-competitive nature.  However, the effectiveness of these

24  restraints in advancing the state's interests under the Twenty-first Amendment has largely gone

25

1    unstudied, and there is little evidence that the restraints are effective in advancing the state's interests

2    in promoting temperance, ensuring orderly market conditions, or raising revenue.

3            To the extent that the restraints may have a minimal effect in advancing the state's interests

4    under the Twenty-first Amendment, the Court finds that the state's interests do not trump the federal

5    interest in promoting competition.  The citizens of this nation have long relied upon a healthy

6    competitive market to distribute goods efficiently and economically, a policy that is embodied by the

7    Sherman Act of 1890.  In light of the minimal effectiveness of the challenged restraints in advancing

8    the state's interests under the Twenty-first Amendment, these restraints must yield to the national

9    goals of a competitive, free market economy.  However, the Court's ruling does not leave the state

10   powerless to achieve its legitimate interests of promoting temperance, ensuring orderly market

11   conditions for beer and wine, and raising revenue.  For example, the state may raise revenue through

12   the sale of alcohol and the collection of taxes, control who is selling alcohol by enforcement of

13   licensing, and educate the public on the societal costs of abusive alcohol consumption.

14           The Court's ruling will require changes in Washington's regulatory system for beer and wine.

15   It is the job of the Washington Legislature and not this Court to determine how to best revise

16   Washington's system in a manner that is consistent with the United States Constitution and federal

17   law.  The Court urges the Legislature to do so with dispatch.

18           The Court will stay the judgment in this case during the 30-day time period allotted to

19   Defendants to file a notice of appeal.  If Defendants wish to seek an extension of the stay beyond that

20   time frame, they should file an appropriate motion.

21           The clerk is directed to provide copies of this order to all counsel of record.

22           Dated:  April 21, 2006.

23                                             s/Marsha J. Pechman_____
                                              Marsha J. Pechman
24                                            United States District Judge

25